Jones, C. J.,
after stating the facts of the case, observed, that the questions arising upon the facts were, first, whether proof of the presentment and demand of the check and notice of,its dishonour were, under the circumstances of the case, indispensable prerequisites to a recovery on the check l and secondly, whether the balance, for which (he check appeared to have been given, *62 was recoverable on the count, upon an account stated or not.
• These questions were considered by him at large upon the general principles of law applicable to the case ; but his opinion upon i they involve, is omitted, and that portion of his observations Alone given, which relates to the legal effect and .operation of the injunction upon the right of the parties; and which branch of the subject was considered by him only. After expressing his opinion on the other question in the cause, the' Chief’ Justice proceeded as follows :
But if the general rules of law or the.usage of merchants required the presentment.of the check and the demand of the money, as prerequisites to the right of action against the drawer; and if the insolvency of the bank, or the temporary suspension of its payments, would not excuse the neglect of demand of payment and notice of dishonour, and if even proof of the due observance of these formalities should be held necessary to entitle these plaintiffs in other circumstances to sustain an action upon the antecedent debt, for which the check was given, yet this case would not, in my view of it, come within the rule. This case does, not stand upon the insolvency of the bank, or its suspension of payment solely. . . ,
The stronger ground is, that the bank was under a legal restraint, and disabled by process of law from applying the deposits of the drawer to the payment of the check : and if such was the •case, a demand could not have been of any possible avail to the drawer, and the reason given for requiring a demand upon a bankrupt fails ; since the officers of the bank could not be expected under such circumstances to interpose with their own moneys to pay the drafts of the dealers. • How far a mere temporary restraint by an injunction at the "suit of a party, praying for it as a precautionary measure, and which is liable to be dissolved or modified, would excuse the necessity of a demand, may perhaps be questionable: for in such case the deposits of the drawer, on which he values remain entire, and it may be, that the obstacle to their application to the payment of the check will be speedily removed. But was this such an injunction, or was it *63 not the remedial process authorised by the act of-the 21st of April, 1825. “ to prevent fraudulent bankruptcies by incorporated companies, and to facilitate proceedings against them, and for other purposes ?”(a)
By the 17th section of that act, the court of Chancery is authorised and required,—upon the application of the attorney general, or a creditor of any incorporated bank or company, and upon proof that such company is insolvent, or that it has violated , any of the provisions of the act incorporating it, or of any other act, which shall be binding upon it,—to issue an injunction restraining such company and its officers from exercising any of the privileges or franchises granted by the act incorporating such company,or by any other act, from the collecting or receiving any debts, and from paying out or in any way transferring any of the monies or effects of such company, until such court shall otherwise order; and the act provides, that it shall be lawful for such court to appoint a receiver of the monies, property and effects of such company, and to distribute the same amongthe fair and honest creditors thereof. The legal effect of this proceeding is to dispossess the officers of the bank of all power and control over the -money of the bank, and to make it unlawful for them to pay any order or checks upon them. And when the process of injunction is accompanied with or followed by the appointment of a receiver, the effect upon the depositors is to divest them of the right to withdraw their deposits, and it effectually operates as a statute-countermand of their checks.
The terms of the act are peremptory, that the monies, property and effects of the company shall be distributed among the fair and honest creditors of the institution; and the depositors and bill-holders are equally creditors of the corporation, and the deposits make part of the monies of the bank distributable amongst the creditors generally.
The money which a dealer deposits is not kept distinct and separate in the vaults, for the use of the depositor to be specifically returned to him upon demand; but-it is intermingled with the other monies of the institution, and makes part of its general *64 fund for the common benefit, and only entitles the depositor to a credit upon the bank to the amount of his deposit: giving him a right to draw upon the bank to that amount at pleasure, in. checks payable upon presentation.
When therefore the bank subjects itself to the provisions of the statuté, and the injunction issues and a receiver is appointed, all right of every creditor to payment, other than by the ultimate receipt of the distributive share of the'assets wholly ceases. The depositors and the bill-holders are alike deferred to the final settlement of the affairs of the bank for their dividend. The fund for the payment of checks is abstracted by the force of the statute, and the check can no longer be paid by the cashier, however great his desire may be to pay it. Can a demand be necessary .under such circumstances 1 or must not the entire change in the state of things absolve the holder of the check from the obligation of presenting it for payment to drawers, who would incur a contempt by paying it, and moreover act in their own wrong, perhaps, and render themselves liable for the whole amount of the money to the creditors. Is not the transfer of the fund, upon which the check was drawn, from the officers of the bank to the receiver by the operation.of law, equivalent to the withdrawal of the money, by the drawer of the check, and must it not equally dispense with the necessity of a presentment, or the formal demand of the money ? The Supreme Court of the State of Massachusetts in the case of Hale v. Burr, [12 Mass. R. 86,] decided that no demand of payment upon the personal representatives of a deceased promissor, or notice of nonpayment "was necessary, under the laws of that state, to charge the indorsers; because an administrator is not obliged to pay any debt of the deceased, except such as are privileged until the lapse of a year from his appointment, and because, in case of a deficiency of assets to pay the debts, a general distribution takes place among all the creditors, with the exception only of those'who fall within the privileged classes. A demand therefore upon the administrator would be nugatory, and a mere troublesome'formality, and it would be-idle to require it. The court in that case admit the rale to he otherwise in England; but they take the distinc *65 tion tjiat in England the executor or administrator is at liberty to pay any debt he pleases, in preference to others of the same degree, and to the total exclusion of all others of the same class, provided the residue of the assets are sufficient to discharge those of a higher grade, and that he may in such case discharge himself, by showing that he has fully administered. In England, therefore, the administrator may pay the bill when called upon; and the other parties upon it have a right to the chance that he will. But in the state of Massachusetts, where the estate is insolvent, there is no reason to presume, or to suppose, that a demand would be effectual. This distinction appears to me to rest upon a solid foundation ; and considerations equally powerful apply to the case of a bank, whose operations are arrested by these peculiar statute-provisions existing in our state, and whose affairs are to be wound up and settled by a receiver. Such a case must form an exception to the general rule. No principal of law, nor any mercantile usage, can require so vain a ceremony, as a formal demand of payment upon a party, who is by a public statute divested of the means and the authority to pay.
If, therefore, it sufficiently appears that the injunction in this case did issue under that statute, no demand of the check could be necessary, nor any notice of non-payment. The case is deficient in clearness on this point, and it will be difficult to collect the character of the injunction from the fact it discloses. But the nature of the proceeding against the bank is a matter of notoriety. We cannot shut our eyes to the fact. The bank was a public institution located in this city. The injunction, which suspended its operations, emanated from one of the highest judicial tribunals in the state, and was openly and publicly announced at the bank. It was accompanied, or promptly followed by the appointment of a receiver, who immediately entered upon the duties of his office, and displaced the officers of the bank; and whose appointment, with the powers vested in him thereby, were published in the gazettes of the city. Acts so public, and proceedings so decisive in their character, and so open and efficient in their operation, were calculated to attract the attention of the citizens generally $ and the debtors and creditors of the bank, in Ctimmon with its *66 officers and dealers of every description, were not only chargeable with notice of them, but must have been conusant of them. If therefore the case had been wholly silent on the subject, and had merely stated the fact, that the bank had discontinued its operations, and suspended its payments, the court might perhaps have judicially noticed the cause of the suspension. But the injunction is expressly declared to be the cause ; and the case refers to the process and its general effect upon the institution as matters of public notoriety, which it was not necessary further to describe or explain. An injunction issued out of the court of chancery arresting all the operations of the bank, and causing it to discontinue the payment of all drafts and checks upon it, and which was continued in force from the month of May, to the time of the trial of this cause, in the month of October following, cannot be regarded as a mere temporary measure, nor properly referred to the ordinary powers of the court, but must be ascribed to the summary jurisdiction conferred upon the Chancellor by the statute.
It is difficult to conceive a case in which that court, in the exercise of its ordinary jurisdiction, could discreetly award to a suitor seeking equitable relief by bill, as a mere cautionary measure, a process at once arresting the whole movements of a public bank in full operation, and deranging all the calculations of its numerous dealers, and shaking the public confidence in its solidity. Such a measure, unless speedily removed, must prostrate any monied institution. It is a remedy for extreme cases only ; and its general application to ordinary cases could not be tolerated. Before the statute, it was unknown ; and under the statute it is applied in those cases only, where the object and intent is to break up the institution, and distribute its funds among its creditors and stockholders; and with the supplementary provision of a receiver to wind up its Concerns, and the settlement and distribution of its property under the direction of the court, it becomes an efficacious and salutary remedy, for the the extreme cases, to which it was intended to be applied. When, therefore, it is predicated of a public banking institution, operating under an act of incorporation) that its payments have been suspended, and its operation *67 ceased, in consequence of an in injunction issued out of the Court of Chancery, we must necessarily intend, that the injunction issued under the statute, and makes a part of the summary remedy provided for the cases specified in the act.
The injunction, then, to which this case refers, must be the summary process given' by the statute, and, from its long continuance, must have been accompanied by the appointment of a receiver. But let it be conceded for a moment, that we are not at liberty to act upon the knowledge of matters, which we derive from public records and judicial acts and proceedings of general notoriety, and that the case does not sufficiently disclose the nature of the injunction, to enable us judicially to refer it to the statute ;—the consequence then would be, that we must grant a non-suit, and turn the plaintiff round to another suit, or we must award a new trial for the sole purpose of introducing that evidence into the cause. Cm, Bono 1 The facts are notorious, and the certain results of another trial, if my conclusions from these facts are correct, must be a verdict for the plaintiffs. But I am satisfied, that upon the case as it stands, I may,, and ought to take the injunction, which stopped the operations of this bank, to be the statute process issued under the act of the 21st of April, 1825, to prevent fraudulent bankruptcies, &c. I feel myself bound, therefore, to look to the peculiar character and legal effects of this statute-injunction; and the brief view I have taken of them, satisfies me that they render this case an exception to the general rule, and that no previous presentment of the check to the bank for payment was necessary to sustain the shit. 1 am accordingly of opinion, that the verdict is right, and that the motion for a non-suit must- be denied.
Oakley, J.,
after stating the facts of the case.
I think, upon this state of the case, that the plaintiff has a right to recover, upon the count in his declaration, on an insimul comput,assent.
It is well settled, that the giving of the check in- question was no payment of the debt arising from the sale of the timber. [Porter v. Talcott, 1 Cowen, 359. Everett v. Collins, 2 Camp. 515.] If *68 the check was unproductive, without any fault or negligence on the part of the plaintiffs, they may resort to the original indebtedness>as ^ie 8"vov,nd of the action. Not having received the check in payment of the account for the timber, they were merely agents of the defendant in drawing the money from the bank, for the purpose of applying it to the satisfaction of the debt; and if they were not guilty of any negligence in the transaction, whereby the defendant has sustained an injury, they may. return,, or cancel the check, and sue on the original consideration.
It is clear, that there was no negligence on the part of the plaintiffs, in not presenting the check at the bank, before it stopped payment. The bank was open but half an hour after giving the check, and the rule appears to be settled, that no laches can be imputed to the holder, if the check is presented at any time during the day after that on which it was given. [Chitty on Bills, 274. 5.]
It does not appear, in the case, that any notice was given to the defendant that the bank had stopped, or that the check had not been paid. Before the defendant could avail himself of the want of any such notice, it was incumbent on him to show that he had been injured by it. The nature and origin of the injunction served on the bank do not appear. But as the.effect of it is stated to have been an entire suspension of the business of the bank, we may take judicial notice, that it must have been issued in pursuance of the 17th section of the “ Jlct to prevent fraudulent bankruptcies by incorporated companies,” [7 L. N. Y. 453.] and the legal inference therefore is, that the bank ivas insolvent. The effect of the injunction was, to divest it of all its funds, and fender it-unable to pay any of its debts; all its. property being thereafter subject to general distribution among its creditors, under the direction of the Court of Chancery.
In the absence of any proof on the subject, we must infer, that the defendant sustained no injury by the want of notice, that his check had not been paid, as he could have-taken no steps to withdraw his funds from the bank. -
The whole case seems to resolve itself into this: the defendant has purchased the property of the plaintiffs; has given his *69 check on a bank, not in payment of the debt, but to enable the plaintiffs to procure the money to satisfy it; and the check has proved unproductive, by reason of circumstances, beyond the control of the plaintiffs, and without any negligence on their part, which has been the source of injury to the defendant. The defendant, then, must still remain liable for the property, and there being an appropriate count in the declaration, the plaintiffs are entitled to judgment.
This view of the subject renders it unnecessary to consider whether, under the peculiar circumstances of this case, the plaintiffs were bound to prove a presentment of the check, and notice of its non-payment, as if they had sued on the check alone: and I do not mean to give anj opinion on that point.

L. N. Y. 1828. 48th Sess. c. 325.