## LANE *vs.* MAINE MUTUAL FIRE INSURANCE Co.

In a policy of insurance against fire it was stipulated, that, " when the property insured should be alienated, by sale or otherwise, the policy should thereupon be void." The insurance was on a store and $200 on the stock of goods therein, for the period of six years. During the existence of the policy, the assured sold all the goods and leased the store by parol to the purchaser; who continued to occupy the same, selling the goods for about six months; when the assured took back both the store and the remaining stock of goods. Held, that, this was not an *alienation* of the store within the meaning of the policy.

Held further, that, notwithstanding this stipulation, the policy would attach to *any goods*, the assured might have in the store, at any time within the period of the six years, not exceeding the amount insured.

The plaintiff in his declaration alleged that *his* store was consumed by fire, &c. Held, that although this was not a technical averment that he was the owner, yet it was sufficient *after verdict.*

So the omission to allege *a value* in the declaration would be cured by verdict.

THIS was an action of *assumpsit* on a policy of insurance, wherein the defendants insured the plaintiff against fire to the amount of two hundred dollars on his store, and the like sum on the goods in said store, for six years from the 17th day of *January*, 1832, promising, " according to the provisions of their act of incorporation, to pay the plaintiff the said sum within three months next after said buildings, &c. should be burnt." The store and its contents were consumed by fire on the night of the 7th of *June*, 1834.

In the 8th section of the act of incorporation, referred to in the policy, is the following provision, *viz.:* " When the property insured shall be *alienated* by *sale or otherwise*, the policy shall thereupon be void, and be surrendered to the directors of

said Company to be cancelled ; and upon such surrender the assured shall be entitled to receive his deposite note, upon the payment of his proportion of all losses and expenses that have accrued prior to such surrender."

It was proved, that one *James Dunn* hired the store of the plaintiff, and purchased all the goods therein in *May,* 1833 — put his son into the store, who traded there and continued to hold exclusive possession until *November* of the same year, when the plaintiff took back the store and goods under an agreement with *Dunn* to allow him a certain sum for his services, and to pay the debts and receive the dues of the store. From this time, the plaintiff continued in the exclusive occupation of the store, and traded therein until it was burned.

The defendants contended, that this was such an *alienation* as rendered the policy void, both as to the store and the goods. But *Parris J.* ruled otherwise, and a verdict was returned for the plaintiff, subject to the opinion of the whole Court upon the facts here reported.

The defendants also filed a motion in arrest of judgment, because,

1. The plaintiff had not alleged in his declaration that he was the *owner* of the store and goods at the time they were burned — 2. That he had not alleged the *value* of said store and goods at the time.

*Longfellow,* for the defendants, contended that there had been an *alienation* of the store within the intent and meaning of the provision of the act of incorporation. The provision was inserted for the benefit of the Company — it was to protect them from risks they did not choose voluntarily to assume — and the risk might fairly be regarded as much less while the property was owned by some persons than others. This provision would be rendered nugatory, by adopting any other construction than that now contended for.

As to the goods, the case shews an *actual sale* — Not by retail, in the usual course of business, but the whole at once. And according to the terms of the contract the policy thereupon became absolutely void, so far at least as regards the goods.

As to the motion in arrest of judgment he insisted that, every

fact necessary to enable a plaintiff to recover should be alleged in the declaration — that, *ownership*, must be proved and therefore should be alleged. He also took the same ground in regard to the omission of an allegation of the *value*.

*S. & W. P. Fessenden*, for the plaintiff, insisted that in legal contemplation there had been no *alienation* of the store, and cited *Jacob's Law Dic. Tit. Alienation.*

If there had been, in regard to the goods, it could not affect the policy on the store ; for though in the same policy, yet they are separate risks. *Stetson* v. *Mass. Mutual Fire Ins. Company*, 4 *Mass.* 330.

That these provisions should be construed strictly against the company, they cited *Lazarus* v. *Commonwealth Ins. Co.* 5 *Pick.* 76.

2. As to the goods, they contended that the 8*th sec.* of the act of incorporation, part of the policy, was not intended to apply to them — it was so from the nature of the case. The true intent was to cover any goods that the plaintiff might have in that store, to the amount insured, during the term of the policy. If it went to restrain a sale of the goods it would be repugnant to the contract and therefore void. 3 *Com. Dig.* 97 ; *Dane's Abr. ch.* 111, *art.* 4, *sec.* 1.

3. It is not necessary to allege *ownership*, or *value*. *Nantes* v. *Thompson*, 2 *East.* 385 ; 3 *Caine's Rep.* 144 ; 2 *Chit. Pl.* 73, *note.*

But if necessary, it is then contended that they are sufficiently alleged. At all events the declaration is good enough *after verdict*. *Warren* v. *Litchfield*, 7 *Greenl.* 63.

PARRIS J. — The first question presented for our decision is, whether the hiring and occupation of the store by *Dunn*, from *May* to *November*, was such an alienation of the property insured as rendered the policy void under the 9th section of the act of incorporation therein referred to.

In the construction of this language we should have regard to the circumstances under which it was used, and the situation and object of the parties using it. The insured was the owner of the store, and for the purpose of securing his interest against the

peril of fire, became a member of the company, assuming the obligations of membership by the payment of money and depositing his note, thereby giving the company a lien, for the payment of such note, on the building insured.

The insurers, in assuming the risk, provide for the continuance of the interest of the assured in the property covered, so long as their liability continues. In other words, they guard against its becoming a gaming or wager policy in any event. Accordingly so long as the property covered belongs to the insured, whether it be in his possession, or that of his agent, servant or lessee, the company's lien continues, and an insurable interest remains. But when the property is alienated, that is, when the insured is divested of title by sale or in any other manner, the lien of the company ceases, and the insured is no longer a member of the company. If a loss then happen it is not his loss, for as he had no property he could sustain no loss, and consequently could be entitled to no satisfaction. The party insured must, in all cases of fire insurance, have an interest or property at the time of insuring and at the time the fire happens. But he need not have an absolute and unqualified or even immediate interest in the property insured. A trustee, mortgagee, reversioner, a factor or agent of goods to be sold on commission may legally insure their respective interests, subject to the rules of the office in which the insurance is effected. Upon general principles applicable to fire insurance, the person insured cannot convey the estate insured and assign the policy, so as to render it valid in favor of the grantee and assignee, unless by consent of the insurer. Mutual offices should have the power of exercising a discretion in the selection of persons whom they may admit to membership, and whose property they may insure. The character of the person insured may be a subject of importance.

If by conveyance of the estate and assignment of the policy, the purchaser would stand in the place of the insured and be entitled to indemnity under the policy, the office might be defeated of this right of selection.

Under these views of the law relating to fire insurance, we think the occupation of the store by *Dunn,* who, having no lease in writing, was at most only tenant at will, was not an alienation

of the property insured within the true meaning and intent of the act of incorporation. The language is, " when the property insured shall be alienated by sale or otherwise," &c. The word alien or alienate extends not only to alienations of land in *deed* but also to alienations in law. A transfer of title by devise, descent, or by levy would be as technically an alienation as a transfer by deed. *Blackstone*, speaking of title by alienation, *Book* 2; *ch.* 19, says. " The most usual and universal method of acquiring a title to real estate is that of alienation, conveyance or purchase in its limited sense ; under which may be comprised any method by which estates are voluntarily resigned by one man, and accepted by another ; whether that be affected by sale, gift, marriage, settlement, devise, or other transmission of property by the mutual consent of the parties." Alienation is defined in *Jacob's Law Dictionary* to be a transferring the *property* of a thing to another.

The object of the statute was, without doubt, to render certain by positive enactment what would otherwise have depended upon common law principles and judicial decisions, *viz.* that the policies of the company should not be obligatory any longer than the property insured continued in the individual named in the policy, as the owner ; and that by a transfer of his interest the policy should be void. This construction is believed to be in accordance with general usage, and the intention and understanding of the parties.

As to the goods, we are clear that the policy was intended to cover and did cover whatever goods the plaintiff might have in his store, at any time during the continuance of the risk, not beyond the amount actually insured.

A construction limiting the policy to the goods actually in the store at the time the insurance was effected would defeat the very object of the insured, and so it must have been understood by the insurer. The plaintiff's business was trade, the vending of goods from his store. According to the construction put upon this policy by the company, the plaintiff has no security except upon the goods actually in the store when the policy was issued, and when those were disposed of, their liability was at an end. We cannot listen, for a moment, to such a suggestion. A policy

of insurance being a contract of indemnity, must receive such a construction of the words employed in it as will make the protection it affords coextensive, if possible, with the risks of the assured. *Dow* v. *The Hope Ins. Co.* 1 *Hall,* 66. The risk of the assured was to continue six years, and the assurers assumed that risk to the amount of two hundred dollars on the goods in the store. Both parties must have understood this to mean on goods which may be in the store at any time during the continuance of the policy. If the assured had goods to an amount exceeding two hundred dollars, the undertaking of the company was limited by that amount. If, by sale, the quantity was reduced below that sum in value, the insurers were so far benefited, as their risk was diminished below that paid for by the premium, and if the whole were sold, the insurers were benefited to a still greater degree by a suspension of the risk. And it was a mere suspension, for upon filling up again the risk revived; and we see no difference in principle between the case where the quantity is diminished by a partial sale and then replenished, and where the whole is sold and an entire new stock purchased. In either case there is a risk, limited in amount by the contract, which has been assumed by the insurer, and for which the insured has paid the stipulated premium.

We are clear that it is a continuing risk, to the amount specified, upon such goods as the insured may have in the store within the term covered by the policy, and not confined to such as were there at the time of assuming the risk.

The defendants have filed a motion in arrest of judgment on two grounds; 1st, because the plaintiff has not alleged in his declaration that he was the owner of the store and goods at the time they were burned; and 2d, because he has not alleged or set forth the value of the store and goods at that time.

The plaintiff alleges that *his* store was consumed by fire; and although this is not a technical averment that he was the owner, yet we think it is sufficient after verdict. The authorities all concur that where there is any defect, imperfection or omission in pleading, whether in substance or form, which would have been a fatal objection upon demurrer, yet if the issue joined be

such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the Judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict. 1 *Saund.* 228, *a.* As when a promise depends upon the performance of something to be first done by him to whom the promise is made, and in an action upon such promise the declaration does not aver performance by the plaintiff, or that he was ready to perform, and there is a verdict for the plaintiff, such omission is cured by the verdict, — *ibid.* 228, *b;* and in *East* v. *Essington, Ld. Raymond,* 810, a condition precedent was not averred to be performed, yet the declaration was held good after verdict, for, say the court, if the condition had not been performed the jury would have found *non assumpsit.*

According to well established principles applicable to fire insurance, a verdict could not have been found, in this case, for the plaintiff, unless he had given evidence to the jury that the store and goods were his property at the time they were consumed. Unless this had been shewn he would have failed to prove that he sustained any loss, and consequently would not have been entitled to any damages and the verdict must have been against him. So also, as he must have proved the *amount* of loss to enable the jury to assess the damages, he must consequently have proved the value of the store and goods when consumed, for without this proof the amount of loss could not have been ascertained. The declaration might, perhaps, have been adjudged defective upon special demurrer, but we think it is sufficient after verdict. The Court will not arrest a judgment unless it be perfectly clear that the plaintiff is not entitled to retain it, and after verdict every legal intendment is to be admitted in its support.

*There must be judgment on the verdict.*