## HARKER *vs.* ANDERSON.

An action does not lie on a *bank check* against the *drawer* until *after notice* of presentment and non-payment.

What degree of *diligence* is necessary on the part of the holder in making presentment and giving notice of non-payment, *quære*.

The law in relation to *bank checks* examined and various *cases* and *dicta* in which such instruments are said to be distinguishable from *bills of exchange* cited and commented upon by Mr. *Justice* COWEN.

ERROR from the New York common pleas. Anderson sued Harker on a *check* drawn by the latter on the *Lafayette Bank* for $140, dated 10th August, 1835, payable to bearer. He proved the *presentment* of the check at the bank and the non-payment thereof. This suit was commenced on the 12th August, 1835. The plaintiff having rested on the above proof, the defendant moved for a *nonsuit* on the ground of want of notice of the non-payment of the check. The presiding judge refused to grant the motion, and the jury, under his direction, found a verdict for the plaintiff. The defendant having excepted to the decisions made against him, sued out a writ of error. The case was very fully dis-

cussed ; but as the cases cited and arguments submitted, especially those on the part of the defendant in error, are examined in detail in the opinion delivered on the decision of the case, it is deemed unnecessary here to state them. The case was argued by

*P. S. Crooke*, for the plaintiff in error.,

*J. R. Whiting*, for the defendant in error.

*By the Court*, Cowen, J.   A check is a bill of exchange payable on demand.   First, it is *a bill of exchange*.   In *Boehm* v. *Sterling*, 7 T. R. 419, 426, Lord Kenyon said there is no difference between bankers' checks and bills of exchange, and the same rules apply to both.   In *Cruger* v. *Armstrong*, 3 Johns. Cas. 5, 7, 8, Radcliff, J. said, "It possesses all the requisites of a bill."   Kent, J. said, "Checks are, substantially, the same as inland bills, payable to bearer."   In *Merchants' Bank* v. *Spicer*, 6 Wendell, 443, 445, Marcy, J. said, "Checks are considered as having the character of inland bills of exchange."   In *Murray* v. *Judah*, 6 Cowen, 484, 490, Sutherland, J. said, "A check is in form and effect a bill of exchange."   These are not merely *dicta ;* they were carried, by the cases cited, into their legal consequences.   Checks were said to be governed by the same rules as bills of exchange ; that, accordingly, they *prima facie* belonged to the holder, might be declared on as bills, were admissible in evidence under the money counts, the drawee was first to be resorted to, and the drawer came in aid only, on the drawee's default.   Therefore the check must be presented for payment, before the drawer could be made liable.   These principles are also either directly held, fortified, or illustrated by the following among many other authorities : Chit Jun. on Bills and Checks, 24, Am. ed. of 1834.   *Ellis* v. *Wheeler*, 3 Pick. 18.   *Shrieve* v. *Duckham*, 1 Litt. 194.   *Humphries* v. *Bicknell*, 2 id. 296, 299.   *Mohawk Bank* v. *Broderick*, 10 Wendell, 304, 307.   M'Culloch's Dict. of Commerce, Checks.   3 Kent's Comm. 74, 3d ed.   *Woods* v. *Shroeder*, 4 Harr. & Johu. 276.   A degree

of confusion may arise from their being said to resemble, or be *like* bills of exchange, into which expression, as mentioned by Savage, Ch. J. in *Mohawk Bank* v. *Broderick*, some of the cases have run ; whereas they are *the bill itself ;* or rather, *bill* is the *genus*, and check is a *species*, just as a note on demand, or a banker's or goldsmith's note is a species of promissory note. Chitty, jun. 18. The law of presentment in respect to promissory notes is the same as that of checks, and is often resorted to as an illustration of the latter. Kent, J. in *Cruger* v. *Armstrong*, 3 Johns. Cas. 8, 9. See the cases collected in Bayley on Bills, Am. ed. of 1836, p. 224, 5, *et seq.* and the notes. Checks are also inaccurately called *inland* bills. A check drawn at New York or Philadelphia is none the less so, for being a foreign bill, requiring the protest of a notary, in order to charge collateral parties. This places it more properly under the less restricted definition of Lord Kenyon, Radcliff and Sutherland, justices, as already given. M'Culloch, *ut supra,* says "they *nearly resemble* bills of exchange, except *they are uniformly payable to bearer,*" as if the latter circumstance impaired the resemblance, or detracted from the attributes of a bill of exchange. He gives the form, which is nearly the same with that in Chit. jun. 24, 25, ed. before cited, and Chit. on Bills, 167, Am. ed. 1836. The words *or bearer* seem necessary only for the purpose of protecting the instrument against the stamp duty, Chit. jun. 25, 26, Chit. on Bills, 545, *Rex* v. *Yates*, Ry. & Mood. Cr. Cas. 170, (now commonly cited as 1 Mood.) *Conroy* v. *Warren*, 3 Johns. Cas. 259, 261 ; and do not seem to be otherwise essential to the definition. Chitty, jun. 24, says it is addressed to bankers ; but M'Culloch, *ut supra,* denies this to be essential. The draft in *Elting* v. *Brinkerhoff*, 2 Hall, 459, was neither negotiable nor addressed to a banker, yet Oakley J. thought it was to be considered as a check. Id. 463.

SECONDLY, it must be payable *on demand.* Accordingly, in *Brown* v. *Lusk*, 4 Yerg. 216, the bill in question, being payable at a certain day after date, was held not to be a check. This was on the authority of Chitty on Bills, 7th Am. ed. 322, who says, "Checks are not due before pay-

ment is demanded, in which respect they differ from bills of exchange and promissory notes payable on a particular day." Id. 545, Am. ed. 1836. Their only peculiarities seem to arise from this circumstance. It may be either express or by legal implication, which always attaches payability on demand to bills or notes, where no time or conditions are mentioned. Chit. jun. 26. Chit. on Bills, 410, and note. M'Culloch, *ut supra*, says they are payable on demand; but in the form given by him, and so of those in Chitty, sen. and jun. the check is a simple order to pay, without the words *on demand*.

Among the peculiarities of a bill payable on demand are the following : it is payable on presentment; acceptance is therefore out of the question. But marking and sending to the clearing house is considered as equivalent to acceptance. No days of grace are allowed, and it must be presented within a reasonable time. M'Culloch, *ut supra*. Chit. on Bills, 410, ed. before cited, with the notes. Chit. jun. 26, *a*. Presentment within a reasonable time is essential in order to charge the drawer or endorser, and it has been said, cannot be dispensed with under any circumstances, even where there is a want of funds. *Cruger* v. *Armstrong, ut supra. Edwards* v. *Moses*, 2 Nott & M'Cord, 433. Chit. jun. 31, *a*. In this, however, the books are by no means uniform. Chitty says it will be excused by whatever will excuse notice. Chit. on Bills, ed. before cited, 423. *Commercial Bank* v. *Hughes*, 17 Wendell, 94. It is a well established general rule, though not entirely unshaken by exception, *vid. Sage* v. *Rance*, 2 Wendell, 532, that where a condition is for a party's benefit, he can dispense with it by cutting off all moral possibility of performance. For this I refer to the cases cited by me in *Harrington* v. *Higgins*, 17 Wendell, 378. It is singular that the ceremonial of *presentment* should be required where it is apparent, and shown affirmatively, that no evil could possibly arise to the drawer from its omission. Such *possible evil* is the only reason for insisting on it, and I observe that it was dispensed with in one case where a party drew without funds. *Franklin* v. *Vanderpool*, 1 Hall, 78. The principle of the *Commercial Bank*

v. *Hughes*, will, I think, warrant the same course, if the plaintiff. shows that the defendant has withdrawn the fund.

It lies with the holder, I apprehend, as in all other cases, whether he seeks to charge drawer. or endorser, to show that he has made a presentment within a reasonable time. Chitty, jun. 48, *a*, says the drawer as well as endorser, is to be considered as a surety, and entitled to claim the strict observance of the ceremony of presentment. *Vide*. id. 31; *a*. The contrary was insisted on the argument; and *Mogadara* v. *Holt*, 1 Show. 317, 12 Mod. R. 15, *S. C.* with another case from Comberbach, were cited, to show that the drawer of a bill is, *prima facie*, the principal. But I think we shall see that we ought not to go back to Lord Holt, sitting in the reign of William and Mary, to test the exact qualities of a bill of exchange. The case cited would apply to the drawer of any other bill, as well as a check; thus overturning the adjudications and practice of more than a century. All the cases since Holt's time, not only require presentment, in order to charge the drawer as well as the endorser; but that the holder at the trial must, on his part either show it to have been made, or establish the circumstances which excuse it. Where it is to be made within a reasonable time, the holder must, in general, set about making it, the very next day after he receives the check, whether drawer or endorser is to be charged. The English books, expressly put them both on the same footing. *Appleton* v. *Sweetapple*, Bayley on Bills, Am. ed. 1836, p. 226, note 46. *Bickford* v. *Ridge*, 2 Campb. 537. M'Culloch, *ut supra*. Chitty, jun. 26 *a*, 44, 50, 51 *a*, 52, and the cases there cited. Chitty on Bills, 410, 412. Denham, Ch. J. in *Boyd* v. *Emmerson*, 2 Adolph. & Ellis, 184. *Bodington* v. *Schlencker*, 1 Nev. & Mann. 540. 4 Barn. & Adolph. 752. *S. C.* I desire it to be remarked here, in reference to. what I shall have to say of certain *dicta*, that in the case last cited, the law of presentment of a check, in order to charge the *drawer*, was distinctly held to be the same as if the presentment had been made in order to charge the *endorser*, viz. that it must, unless some excuse be shown for the delay, be presented, at farthest, the very next day after the creditor re-

ceives it. No doubt the time of presentment may be modified by circumstances ; and among these several American cases have held that a check being drawn on a bank, having no funds of the drawer to meet it, excuses an immediate presentment, as well as where the funds are subtracted by the drawer, intermediate the date and presentment. *Conroy* v. *Warren,* 3 Johns. Cas. 259. *Murray* v. *Judah,* 6 Cowen, 484. *Eichelberger* v. *Finlay,* 7 Har. & John. 381. *Franklin* v. *Vanderpool,* 1 Hall, 78.

A great struggle was made at the bar, mainly on the authority of certain *dicta,* almost entirely to withdraw checks from the rules applicable to other bills of exchange. A remark fell from Mr. Justice Sutherland, in *Murray* v. *Judah,* which has been understood by judges in several subsequent cases, and perhaps justly, as recognizing a remarkable exception. After insisting in the broadest language, that a check was in form and effect a bill of exchange, and laying down the rule that demand must be made in order to charge the drawer, he adds, that " as between the holder of a check and an *endorser* or third person, payment must be demanded within *a reasonable time ;* but as between the holder and maker, or drawer, a demand at *any time before suit brought,* is sufficient, unless it appear that the drawee has failed, or the drawer has in some other manner sustained injury by the delay. These principles are recognized and established by this court in *Gruger* v. *Armstrong,* 3 Johns. Cas. 5, and *Conroy* v. *Warren,* id. 259." This distinction between *drawer* and *endorser* was, I perceive, afterwards repeated by Savage, Ch. J. in *Mohawk Bank* v. *Broderick,* 10 Wendell, 306, and by Oakley, J. of the superior court of the city of New York, substantially, in *Cromwell* v. *Lovett,* 1 Hall, 68 ; and more distinctly in *Elting* v. *Brinkerhoff,* 2 Hall, 463. Marcy, J. in *Merchants' Bank* v. *Spicer,* 6 Wendell, 445, seems slightly to hint at the distinction, though at the outset of his opinion, he repudiates it, and lays down the rule as it is undoubtedly established by direct authority, mercantile practice, and all the writers on commercial law. He says, " checks are considered as having the character of inland bills of exchange, and the holder, if he would pre-

serve his right to resort to the *drawers* and *endorsers*, must use the same diligence in presenting them for payment, and in giving notice of the default of the drawee, that would be required of him as the holder of an inland bill." That this is the undoubted rule, I again refer once for all, to *Boding-ton* v. *Schlencker*, as before cited, and other books which I mentioned in connection with it. The same learned judge, however, who first suggested the distinction, repeated it again in the late case of *Gough* v. *Staats*, 13 Wendell, 549. It is also repeated upon the same authorities, except the last, by Chancellor Kent. 3 Kent's Comm. 87, 3d ed.

The only way to account for the apparent anomaly thus raised and repeated, is by supposing that as the original remark was entirely *obiter*, except in its premises, viz. that a check is a bill of exchange, the distinction was hastily drawn as the result of the cases cited in its support. They certainly allowed that the plaintiff may insist, as an excuse for delay, that the drawer had no funds, or had withdrawn them ; but they went no farther. In *Conroy* v. *Warren*, one of them, which was an action against the *drawer* of the check, who had withdrawn his funds, Thompson, J. in delivering the leading opinion, admits, that even had the action been against an endorser, the plaintiff might recover, on showing that the defendant had sustained no injury by the delay ; and he adds, that in the case then under consideration, the drawer having subtracted the fund, had furnished ground for an interference against his having sustained damage, and drawn the *onus* of proving actual damage on himself. Kent, J. put the case on the same ground. Both agreed that the check must, in all cases, be presented *within a reasonable time*, a compliance with which rule would, in general, require that it should be presented as soon as possible, under all the circumstances. The two cases together had gone fully to establish that the check was a bill of exchange, and that the plaintiff might excuse delay, though, in *Cruger* v. *Armstrong*, the delay was held to be fatal, notwithstanding the withdrawal of the fund. *Murray* v. *Judah* was itself also the case of the *drawer* not only wanting funds, but soliciting the very delay which he object-

ed to on the trial.  There was indeed nothing in the result of any of the cases cited incompatible with the doctrine applicable to other bills of exchange, which is equally, that the plaintiff may excuse a quick presentment, where the drawer either had no funds originally, or had himself got possession of them, or used them for his other purposes. The *onus*, however, still lies with the plaintiff, who may excuse himself, not by showing that the fund remains unimpaired and that the defendant may therefore obtain it, but by proof of some misconduct which rendered presentment nugatory.  It is the drawer's business to keep the fund good.  Doing so, the payment is complete, if the holder do not present the bill at the first reasonable opportunity; while it is quite unreasonable that the drawer should pay two debts, each of equal amount, with the fund, merely because the prior creditor happens to be a little dilatory.  If left, it may be lost; the banker is bound to answer the draft, and is liable to an action at the suit of the drawer, if he refuse. *Marzetti* v. *Williams*, 1 Barn. & Adolph. 415.  The endorser, it is true, stands in a situation which calls for immediate presentment; but on no better ground.  He has a remedy over against the drawer, with damages, if you please ; though this is doubtful, if the bill be inland.  The drawer has the same remedy against his banker, with a clear right to damages.  The endorser, should he subtract the fund in any way, would equally lose his objection that delay of presentment had intervened.

To say that the drawer shall be liable on a presentment at any distance of time, unless he can show special damage, has not been held by any case, any cited on the argument at least, since *Mogadura* v. *Holt*.  This case, indeed, declares that the *onus probandi* of loss or damage lies on the drawer ; and if he show none, he is liable.  It certainly goes the whole length of the decision below in the case at bar.  It dispenses both with presentment and notice as prerequisites to charge the drawer even of a foreign bill of exchange.  It seemed to be cited with considerable confidence, and certainly not without plausibility, as crowning the *dicta* which have fallen successively from able judges of

this and the superior court of the city of New York. The learned editors of Bayley on Bills, Boston ed., 1836, p. 229, note (*o*), very properly inquire, after citing the *dictum* in *Murray* v. *Judah*, " Why should not the same principle apply to the drawer of a common bill of exchange?" I will add, in regard to *Mogadara* v. *Holt*, that on its being cited before Abbott, Ch. J., A. D. 1823, *Hill* v. *Heap*, 1 Dowl. & Ryl. N. P. Cas. 57, 59, he answered, " The rule which has been referred to with respect to the proof of actual damage, and the presumption arising from the absence of such proof, cannot weigh with me *now ;* because I find that it has been repeatedly contravened, and is now considered as exploded : and, as it seems to me, very properly so ; because it is always to be presumed, until the contrary appears, that the *drawer* has effects in the *drawee's* hands, and that he will be damnified by an omission to present the bill at the drawee's.". May I be permitted to ask, with the editors mentioned, Messrs. Phillips & Sewall, does not the argument apply even with greater force to common checks?

The remarks mentioned as having been made in this court and the superior court, since *Murray* v. *Judah* was decided, were all of them, like the original *dictum* on which they were founded, entirely *obiter ;* and I should feel the greatest reluctance to question them, if they had not been clearly so. I have therefore examined their foundations, and must say something farther in respect to these and a single other incidental remark made in *Murray* v. *Judah ;* all, I trust, in a spirit of becoming diffidence. I have thought the examination quite necessary, though not perhaps absolutely so, in reference to some very important consequences sought to be drawn from them on the argument of the case at bar. This court have never adjudged, as far as I can find, that there is any distinction as to the time of presentment, whether its purpose be to charge *endorser* or *drawer.* I entertain entire confidence that no such distinction can be reduced from those case on which alone the dicta which I have noticed are founded. I will only add that those cases are no more than an application of the doctrine in *Bickerdike* v. *Bollman*, 1 T. R. 405, which was

Harker v. Anderson.

among the first cases, if it was not the very first, which held that drawing without funds, is a fraud, and takes away the title of the drawer to exact notice. We have seen that in *Franklin* v. *Vanderpool* this has also been extended to excuse presentment of a bill; in that case a check. The law there, 1 Hall, 80, was drawn from *Bickerdike* v. *Bollman*; and Mr. Justice Oakley gives the general rule with its qualifications. From these, it is obvious, that the cases upon the authority of which Mr. Justice Sutherland spoke, and the one in which he was speaking, stopped even short of the principle of *Bickerdike* v. *Bollman.* Instead of saying that presentment might be made at any time no matter how remote, the learned judges might with great propriety have said, not merely, that delay in presenting was excused, but, that the act was totally dispensed with. I confess myself quite too obtuse to distinguish between the man who sends out his check without funds at the time, either actual or legally potential, and the man who takes away the fund, which he has marked by that check in favor of an honest creditor. What man draws a check without making a note of it as the basis by which to regulate his subsequent drafts? And if he be so dishonest or heedless as afterwards to subtract the fund, is it hard to make him pay a debt with the very money which he had thus appropriated to its payment? No. He holds the cash thus wrongfully obtained, as money received to the use of the holder of the check. I must be allowed to object, especially since the decision in *The Commercial Bank* v. *Hughes*, to a qualification implied by one expression of Buller, J. in *Bickerdike* v. *Bollman,* that the withdrawal of the fund, after the bill falls due, is any way more honest in morals or law, than its original absence. In other respects, the law is certainly well laid down by him, especially the rule of evidence. Speaking of *Tindal and Brown*, tried before him at Guildhall, in which the jury erred because they supposed it lay with the *drawer* who was sued, to prove that, for want of notice, he had suffered by non-payment of an accepted bill, he said the *onus* lay on the other side —on the plaintiff; and went on to show that the *onus* lies equally with the plaintiff, if he had omitted notice of non-accep-

tance, because " it is presumed that the bill is drawn on account of the drawee's having effects of the drawer in his hands ;" the reason repeated since, as we have seen by Abbott, C. J. May I ask again, is the presumption less cogent, because the bill is payable on demand ? because it is a check ? Does not every reason conspire to keep the *onus* steadily on the same shoulders ? It was supposed at the bar, that we were to infer fraud in the draft because the bank refused to pay it, and thus change the *onus*. It would be matter of regret if the general presumption of integrity could be impaired by the mere act or declaration of third persons, not under oath. The drawee has never been held to be the agent of the drawer, so far as to conclude or affect him on the question whether there be effects in the hands of the former ; nor can we assent to that proposition.

The multiplication of anomalies in any branch of our jurisprudence is an evil, so far as they tend to perplexity and confusion in the application of general rules ; and they are for this reason alone usually avoided, even though individual hardship may result from steady adherence to a rule. Above all should they be avoided where they do not even subserve the purposes of right in the particular case. The rule laid down by the learned judge in *Murray* v. *Judah* was perfectly correct when taken in its application to that case; and he might, without departing from just legal analogy, have said the drawer shall not, in a case like this, be excused even without any presentment, if he cannot prove that he has suffered by the omission. The drawer Judah had withdrawn all his funds, and tampered with Foote, the former holder, to delay presentment ; and repeatedly promised to pay, knowing all the facts. Well indeed did the judge say that he had made himself a principal under the circumstances. But if he is to be understood (and this was insisted at the bar,) as going out of the case and saying that as a general rule, the drawer is the principal, he is entirely unsupported by the authorities which he cites. *Seymour* v. *Minturn*, 17 Johns. 169, is one of them. It decides that the maker of a note is *prima facie* the principal ; and what Bayley J. said in *Claridge* v. *Dalton*, 4 Maule & Selw. 222, 3, the

Harker v. Anderson.

only other authority mentioned, rather admits the drawer to be a surety ; but insists that giving time to the payee, would not, under the circumstances of the particular case, discharge him.  He puts the relation between endorsers as a parallel case ; and says that giving time to an endorser lower down on the bill, with a view to collect of one still lower, would not discharge prior endorsers.  It is, therefore, not analogous, unless it be shown that an endorser is, *prima facie*, a principal.  Such are the only references made by the judge, for the position which, it was supposed on the argument, he took in *Murray* v. *Judah*.  The extent to which that position is now sought to be applied would cover all bills ; for *Claridge* v. *Dalton* was the case of a common bill of exchange payable at two months.  I agree that the learned judge was right in reasoning as he did, from the doctrine of bills generally to checks.  What is that doctrine ?  In *Clark* v. *Devlin*, 2 Bos. & Pul. 263, 366, Chambre, J. said, the acceptor is to be considered as the principal debtor, and the other parties as sureties only.  In that case the drawer was insisting that he should be discharged, because the holder had given time to the acceptor ; and the whole court held that he should, had he not himself assented to the delay.  I adverted to this question in a general way before, but will make one or two additional quotations.  Chitty sen. says, " The acceptor of the bill is primarily liable, and the drawer and endorsers may be considered in the nature of *sureties* for his acts."  Chit. on Bills, 443, Am. ed. 1836.  Chitty, jun. says, " Upon the ground that they are *sureties* only, the *drawers* and endorsers of a *bill* or *check*, and the endorsers of a note are entitled, as *sureties*, to claim the strict observance of the ceremony of presentment to the acceptor, *drawee* or maker."  Chit. jun. 48 *a*. Am. ed. 1834.  Is a drawer the less a surety before the bill is accepted ?  Suppose he agrees to give time to the drawee without acceptance ; as if he were to tell the drawee, the banker, to credit the check ; would not this equally discharge the drawer ?  None of the collateral parties, unless they come by way of accommodation, are *sureties* in the strict sense of the word.  The endorser has received value, as well as the drawer.  But they are all re-

garded as *quasi* sureties; as guarantors, upon the condition that the fund shall first be resorted to in the hands of the drawee. They are sometimes called *collateral parties;* no matter what, so long as they are not the principals. *Claridge* v. *Dalton,* cited in *Murray* v. *Judah,* and on which the *dictum* we are considering was mainly founded, presented the relation of drawer and acceptor, yet was applied to that of drawer and drawee. Mr. Selwyn, in his Nisi Prius, 1 vol. Am. ed. of 1839, p. 363, says of the acceptor, although he undertakes to pay the debt of the drawer, yet is he primarily liable; for it is incumbent on the holder of the bill to resort to him in the first instance. Under this view, although his engagement is really only collateral, yet he may be considered as the principal debtor, and the remaining parties as sureties only. These remarks are obviously applicable as well to the drawee before acceptance as after. He holds the fund, and must be resorted to primarily. This is not disputed by any case or *dictum.* But I do not pursue the argument; for if the drawer of a check be the principal, it is impossible to say that the drawer of any other bill is not so. He clearly is entitled to the benefit of immediate presentment. We have seen how a contrary doctrine was treated by Ch. J. Abbott; and I trust that no court, at this day, can think of retrograding to the twilight doctrine of bills in the age of *Mogadara* v. *Holt.* The cases of that age are the only ones I have seen which treat the drawer as any other than a collateral party.

All the cases agree that immediate notice to the *drawer,* of presentment and non-payment of *bills of exchange,* is essential to a right of action against him.

We come now directly to the question on which the court below passed. Is notice of presentment and refusal to pay a check, necessary? I trust we have seen clearly, that a check *is a bill of exchange.* *A priori,* therefore notice should be given. The drawer was sued in the case at bar, and no want of funds was shown in the hands of the drawee. Does positive authority make an exception? I have been through with the cases cited at the bar, and have looked into several others; and so far from finding any adjudica-

Harker v. Anderson.

tion or *dictum* that a drawer may, under such circumstances, be subjected without notice, except that in 1 Hall, 68, I have found many books requiring it to be given. I will cite from a few. The two Chittys were quoted on the argument; Chit. on Bills, 465, Am. ed., 1836, and Chitty, jun. 44, Am. ed., 1834; both lay down the rule that notice must be given. They do not cite cases for what has not, I presume, been seriously questioned since Holt's time; but I suppose they advance the rule as a most obvious corollary from what cannot be disputed, that a check *is a bill of exchange.* Chitty jun., says, " When the drawer has endorsed and delivered a check to a third person for value, he is placed, in substance, in the position of the drawer of a bill or endorser of a note." Speaking of presentment, at the same page, he says, " it is indispensable, to fix the drawer of the check with liability, and he is also entitled to *due notice of dishonor.*" In *Eichelberger* v. *Finley,* 7 Harr. & Johns. 381, the court assumed this, and labored to prove that notice was excused, because the defendant, who was drawer of the check, had no funds in the bank to which it was directed. In *Lilley* v. *Miller,* 2 Nott & M'Cord, 257, the same course was taken. In *Mohawk Bank* v. *Broderick,* 10 Wendell, 306, Savage, Ch. J. said, if the action be against the drawer of the check, and he have no funds, &c., he cannot object the *want of demand and notice.* In *Edwards* v. *Moses,* 2 Nott & M'Cord, 433, 435, it was attempted to excuse the usual steps to charge the drawer of the check, but it was not allowed. Richardson J. said, *demand* should have been made and *notice given.* In a like case, *Cathell* v. *Goodwin,* 1 Harr. & Gill, 468, Johnson and Gill contended that *notice* was not necessary, because excused. The court overruled the objection. In *Rickford* v. *Ridge,* 2 Camp. 537, Lord Ellenborough said, it is enough for the holder of the check to give *notice of dishonor* to those against whom he seeks his remedy. In *Woods* v. *Schroeder,* 4 Harr. & Johns. 276, notice of dishonor was given to the drawers, though they had withdrawn their funds beyond reach of their check and countermanded its payment. In *Cruger* v. *Armstrong,* so often before cited, Radcliff, J. said, the

want of funds may excuse the want of *notice*. In *Levy* v. *Peters*, 9 Serg. & Rawle, 125, 127, proof of presentment was dispensed with under special circumstances; but Tilghman, Ch. J., said, " In general there cannot be a recovery without proof of demand and *notice to the drawer*." All the cases I mention to this point were actions on checks, and most of them against the drawer. In *Franklin* v. *Vanderpool*, 1 Hall, 80, which was also against the drawer of a check, Oakley J., after showing that a check is a bill, adds, " The contract created between the *drawer* and payee is, that the bill shall be presented to the payee and payment demanded, and in case of non-payment that *notice thereof* shall be given to the drawer." It is true that, in *Cromwell* v. *Lovett*, 1 Hall, 68, he says that he cannot object the want of notice unless he also show that he had been injured by the neglect; but the remark admits that notice may be essential; and how far the right to it may be qualified, will be collected from what I have thought it my duty to say under another head, while inquiring into the general agreement between the rules which apply to checks and to bills of exchange as a class to which the former belong.

In going over the cases, it will be perceived that I have endeavored to anticipate, as far as possible, the grounds assumed by the counsel for the defendant in error, without taking them up and answering them separately. They were, that a check does not become a bill of exchange till it has been negotiated, it not being so as between drawer and holder, for which the *dictum* in *Murray* v. *Judah*, and corresponding *dicta* in other cases were cited ; that the drawer is a principal, for which another *dictum* in *Murray* v. *Judah* and *Mogadara* v. *Holt* were cited, with a less pertinent case, *Sarsefield* v. *Witherly*, Comb. 152. The drawer was likened to the maker of a note payable on demand at a certain place, on whom it is said an actual demand is not necessary ; but he must, at his peril, have funds there and be ready to pay and show this in his defence. *Huxton* v. *Bishop*, 3 Wendell, 21. *U. S. Bank* v. *Smith*, 1 Wheat. 175. It was added, that the bank having funds is liable in damages, if it refuse to answer the check. *Marzetti* v. *Williams, ut supra.*

A further distinction between checks and bills generally was sought to be raised from *Rothschild* v. *Corney*, 9 Barn. & Cress. 388. The defendants had received the plaintiff's checks from one who had fraudulently obtained them of the plaintiff. The checks were passed to the defendants six days after their date. The plaintiff, therefore, contended, that so long a period having elapsed, the checks must be regarded as over-due ; and the defendants took no title beyond that of the one who obtained them. None of the judges, except Littledale, J., mentioned any distinction in this respect between a check and any other bill. But he said, that though a party receiving a bill or note which is overdue, takes no greater title than the one from whom he receives it, the law he thought could not be applied to checks. It is remarkable that in the previous case of *Down* v. *Halling*, 4 Barn. & Cress. 330, all the court concurred in holding that bills, notes and checks stand on the same footing in respect to this very point ; and they intimated that if there were any difference, the check should be used the more speedily. Such a ruling on so short a delay, with us in respect to a bill, and especially a note payable on demand, would, perhaps justly, be deemed a very singular severity, after *Sanford* v. *Mickles*, 4 Johns. R. 224, and other cases. In that cited, the note had run five months, and yet this was held no such conclusive presumption of dishonor that the endorsee was bound to regard it. It was, however, a case presenting peculiar circumstances, and cannot be relied on as furnishing a general rule.

I will barely add a single remark from a writer, whose book is devoted more directly than any other to the consideration of checks : " Instead of presenting a negotiable bill, note or *check* for payment," says Chitty, junior, " the holder may, within *a reasonable time* after he has received it, that is, within the time allowed for presentment, put the instrument into circulation. The transferee has the same privilege ; and the prior parties will not be discharged, if the last endorsee or assignee make a due presentment. But the drawer and earlier endorsers might be discharged, if the instrument were kept in circulation through successive

parties for a period, which, in reference to the nature of the instrument, and the course of business in similar cases, can be deemed unreasonable." Chitty, jun., ed. before cited, p. 52. I cite these remarks, in connection with others more immediately pertinent, to show that the differences between checks and other paper of the class to which both immediately belong, if there be any, are very few, at least in the estimation of English writers on commercial law. It is most strange, if indeed that law has, in the instance before us, so far deviated from its usual demands of promptitude and vigilance, as was supposed on the argument, that no sanction of the anomaly should be found in adjudged cases, or in books which treat of commercial usage on either side the Atlantic.

There is no pretence, on the proof, that the defendant in the case at bar had countermanded the payment of the check at the bank. But it is said that if notice were necessary, as a general rule, yet here is proof of a want of funds in the hands of the bank, which is to be collected thus: the drawee is the agent of the drawer, and therefore his refusal is evidence that he had no funds. I have particularly noticed this argument before. It would equally apply to any other bill, and at once overturn the necessity of notice to the drawer in all cases. Indeed, it will be perceived that the misfortune of most of the arguments for the defendant in error, is the proving of so much that we cannot adopt them, without encountering many of the best established and most salutary rules intended to govern the conduct of parties to this kind of commercial paper. The same remark will apply to another suggestion thrown out in the course of the discussion, though I believe it was not very seriously insisted on: that the commencement of this suit, which it seems followed the demand immediately, was itself a notice within the rule. Beside: the latter argument is involved in a vicious circle; it assumes that notice *is* necessary as the condition which entitles the holder to sue, but satisfies itself with notice by the commencement of a suit. It has, to be sure, been said, that in case of a precedent debt or duty, the commencement of the suit is a sufficient notice. It would have been

better to have said that no notice need be given, in such case, because the party must take notice at his peril. The rule has never been applied, except to satisfy the formal allegation of *licet sæpius requisitus*, which is in truth merely formal, and means nothing or next to nothing. It is asserting, at most, that the party had been *often requested* by the voice of his legal conscience addressed to himself; or adopting, with Adam Smith, a more lively personification, in the theory of moral sentiments, by the *man within* addressing the *man without.* Why not say the allegation, *licet*, &c. is surplusage, and therefore need not be proved ?

In no view which I am able to take of the question, do I think the decision of the court below can be sustained. The judgment ought accordingly to be reversed, a *venire de novo* to issue from the court below, and the costs to abide the event.

The CHIEF JUSTICE and Mr. *Justice* BRONSON concurred in the opinion that the *drawer* was entitled to *notice of the non-payment* of the check; but they expressed no opinion as to the degree of diligence necessary on the part of the holder, in presenting and giving notice of the non-payment of the check.

Judgment reversed, and *venire de novo.*