(79 Misc. Rep. 411.)

### CASPER v. KUHNE et al.

(Supreme Court, Appellate Term, First Department. February 11, 1913.)

1. BILLS AND NOTES (§§ 2, 386*)—CHECKS—WHAT LAW GOVERNS.

Where a check drawn in New York is made payable in a foreign country, the law of New York governs the original obligations of the parties, including the necessity of notice of protest as a condition of enforcement of liability against the drawer; but the law of the foreign country determines the form of protest necessary.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 30, 1051–1054; Dec. Dig. §§ 2, 386.*]

2. BILLS AND NOTES (§ 408*)—INLAND CHECKS—PROTEST—NECESSITY.

An inland check, like any other inland bill of exchange, need not be protested to charge the drawer.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1019–1021; Dec. Dig. § 408.*]

3. BILLS AND NOTES (§ 408*) — FOREIGN CHECKS — PROTEST — NECESSITY — "CHECK."

Under Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 260, requiring protest and due notice as a condition of the liability of drawer and indorser of a foreign bill of exchange, and section 321, defining a "check" as a bill of exchange drawn on a bank payable on demand, and declaring that, except as otherwise provided, the provisions applicable to a bill of exchange payable on demand apply to a check, a foreign check is a species of foreign bill of exchange, and must be protested to charge the drawer and indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1019–1021; Dec. Dig. § 408.*

For other definitions, see Words and Phrases, vol. 2, pp. 1109–1112; vol. 8, p. 7600.]

Appeal from City Court of New York, Trial Term.

Action by Louis Casper against Percival Kuhne and others. From a judgment of the City Court of the City of New York for plaintiff, defendants appeal. Reversed, and directed for defendants, dismissing the complaint on the merits.

Argued May term, 1912, before SEABURY, LEHMAN, and PAGE, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Briesen & Knauth, of New York City (Antonio Knauth and George T. Hogg, both of New York City, of counsel), for appellants.

Thompson & Fuller, of New York City (John A. Thompson and Seymour K. Fuller, both of New York City, of counsel), for respondent.

PAGE, J. The defendants are bankers in the city of New York. The action was brought to recover upon an instrument in writing of which the following is a translated copy:

"Check No. 02331.　　　　　　　　　　　　　　　　K 2250.

"Pay you against this check out of our deposits (in case the first check remains unpaid) to Mrs. E. Utassy or order two thousand two hundred and fifty Krones.　　　　　　　　　　　　　　　Knauth, Nachod & Kuhne.

"New York, December 11, 1905.
"To the Wiener Bank Verein, in Vienna."

The plaintiff paid the defendant $458.44, and received the above in a set of two, one marked with the figure "1," in identical terms as that set forth above, except that it provided for payment in case the second check remained unpaid. No instructions were given the plaintiff by the defendants. The first instrument of the set was mailed on December 11, 1905, carefully addressed to the payee at Prague, Austria, but it is claimed was never received by her. The second was mailed a few days later, and received by the payee. Upon presentation of the second to the Wiener Bank Verein, payment was refused upon the ground that the first had been paid. It appears that the "first" had been presented by a stranger, who wrote on the back thereof:

"Received on December 21, 1905.　　　　　E. Utassy, manu propria."

[1] At the close of the plaintiff's case the defendants moved for a dismissal, on the ground that the plaintiff had failed to prove protest or notice of protest to the drawer. There was some evidence that under the Austrian law a check need not be protested in order to charge the drawer. This was immaterial, since the law of New York, where the contract was made, governs the original obligations of the parties. The contract was to be performed in Austria, and Austrian law controls the manner of its performance. Accordingly the formality necessary to constitute a protest would be determined by the law where the protest was to be made, but the question of the necessity of protest in some form, and whether due notice of protest was a condition of the drawer's original agreement to be bound, is one which must be decided according to the law of New York, where the contract was made. Amsinck v. Rogers, 189 N. Y. 252, 82 N. E. 134, 12 L. R. A. (N. S.) 875, 121 Am. St. Rep. 858, 12 Ann. Cas. 450.

The question to be determined is whether the instrument upon which the plaintiff sues is a foreign bill of exchange, within the meaning of section 260 of the New York Negotiable Instruments Law, which requires protest and due notice as a condition of the liability of both drawer and indorsers of a foreign bill of exchange. The instrument

is clearly a check, but by section 321 of the Negotiable Instruments Law:

"A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

There is nothing in the wording of the statutes to exempt a foreign check from the general class of foreign bills of exchange, and it would seem, therefore, that every foreign check is a species of foreign bill of exchange, which by statute must be protested in order to charge the drawer.

[2] While the law is well settled that an inland check, like any other inland bill of exchange, need not be protested in order to charge the drawer, the reports and digests are singularly lacking in precedents upon the necessity of protest in case of a foreign check. This is, perhaps, due to the almost universal custom of protesting such checks for nonpayment.

Various attempts have been made to exclude checks from the general class of bills of exchange, and cases are cited broadly for the proposition that a foreign check is not a bill of exchange. There are even dicta to the effect that a foreign check is an inland bill of exchange; but a careful analysis of each case fails to support the proposition for which it is cited. For example, in the case of Merchants' National Bank v. Ritzinger, 118 Ill. 484, 8 N. E. 834, the question before the court was whether a check, drawn in a set, upon a bank in another state, retained its character as a check, so as to permit the holder to sue the drawer before acceptance. The digest of the case and the statement preceding the opinion declare that the instrument was not a bill of exchange, but nothing of the kind appears in the opinion. The court merely held that the draft retained its character as a check, which was true, in spite of the fact that it was also a bill of exchange.

Again, in the case of Roberts v. Corbin, 26 Iowa, 315, 96 Am. Dec. 146, which is cited as holding that a foreign check is not a foreign bill of exchange, the only ruling made upon the subject is as follows:

"As to the character of the instruments under which the interveners claim —that is, whether they are foreign bills of exchange or merely bankers' checks—the counsel do not differ, but agree in treating them as the latter. * * * There is no assignment of error upon the point that the court found that said instruments were simply bankers' checks. This may, therefore, be taken for granted."

The question before the court was whether the holder of a check may sue the drawee without acceptance.

There are many cases in this and other jurisdictions which point out the various characteristics of a check, as distinguished from other forms of bills of exchange. All of these recognize the check as a species of bill, and governed by the same general rules, and in no case is any distinction drawn in the matter of presentment and protest. Chapman v. White, 6 N. Y. 412, 57 Am. Dec. 464; Hibernia National Bank v. Lacombe, 84 N. Y. 367, 38 Am. Rep. 518; Risley v. Phenix Bank, 83 N. Y. 318, 38 Am. Rep. 421; Moses v. Franklin

Bank, 34 Md. 574; Eyre v. Waller, 5 Hurlstone & N. 459; Rogers v. Durant, 140 U. S. 298, 11 Sup. Ct. 754, 35 L. Ed. 481; Harker v. Anderson, 21 Wend. 373.

In Harker v. Anderson, supra, Cowen, J., after citing and explaining the many authorities holding that a check is a species of a bill of exchange, says at page 374:

"Checks are also inaccurately called inland bills. A check drawn at New York on Philadelphia is none the less so for being a foreign bill, requiring the protest of a notary in order to charge collateral parties."

Daniel on Negotiable Instruments says (5th Ed. vol. 2, § 1600):

"While checks have not all the incidents of bills of exchange, they may be yet included in that term, when applied to the steps to be taken in case of dishonor. The same reasons which would authorize the protest of an inland bill of exchange for nonpayment would authorize the protest of a check, the payment of which had been refused on presentment. * * * And if drawn in one state upon another, a protest would doubtless be necessary in order to charge an indorser; the check being in that event a species of foreign bill."

Edwards on Bills and Notes, in discussing the attributes of checks and bills of exchange, says at section 550:

"A check drawn on a foreign bank is a foreign bill." ·

The reason for the requirement of the common law that a foreign bill of exchange must be protested in order to charge the drawer and indorsers is clearly stated in Daniel on Negotiable Instruments (5th Ed.) § 927, as follows:

"The requisition of a protest in the case of foreign bills was in order to afford authentic and satisfactory evidence of due dishonor to the drawer, who, from his residence abroad, would experience a difficulty in making proper inquiries on the subject and be compelled to rely on the representations of the holder."

This reason, which also underlies the present New York statute, applies with equal force to a foreign check as to any other foreign bill.

In view of the foregoing, we are constrained to hold that section 260 of the Negotiable Instruments Law applies equally to a foreign check. As the liability of these defendants as drawer was discharged by failure of the holder to protest the check, the direction of the trial court was erroneous.

The judgment appealed from must be reversed, with costs, and judgment directed for the defendants, dismissing the complaint on the merits. All concur.