### THE MERCHANTS' BANK *vs.* SPICER.

The delivery of a *bank check* by one bank to the *porter* of another bank upon which the check is drawn, and the return of the same as *not good*, accompanied by evidence of the invariable practice of the porter to *present* checks thus received, and to *return* them, if dishonored, on the same day that they are delivered to him, is sufficient proof of *presentment* to authorize the submission of the case to the jury.

A *bank check* need not be presented on the day it is received.

The *initials* of the name of the holder of a bank check, endorsed on the check, are enough to charge him as an *endorser.*

A person who has guarantied the payment of a debt, becomes a *competent witness* on the delivery to him of the guaranty with permission to destroy it, and its subsequent destruction.

Where such delivery is made by *counsel*, on the trial of a cause, it will be inferred that they act by authority of their client.

THIS was an action of assumpsit, tried at the New-York circuit in April, 1828, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The declaration contained a count on a bank check, and the ordinary money counts. On the *eleventh* day of July, 1826, the defendant sent his clerk to the *Merchants' Bank*, and deposited there a bank check for $2000, and $25 in cash, which were passed to his credit on the books of the bank. The check was drawn by the *United States Lombard Association*, by its president, on the *Tradesmen's Bank*, payable to P. W. Wetmore, or order, and when deposited, had on it the endorsement of the payee, and the *initials* of the

defendant, viz. "P. W. S." It was deposited between the hours of two and three o'clock P. M. On the next day the check was delivered to the *porter* of the *Tradesmen's Bank*, who, according to the course of business between the banks of the city, called to make and receive exchanges, and about noon of the same day the check was returned by the Tradesmen's Bank as *not good*. This was the only evidence of the *presentment* of the check, except that the *porter* of the Tradesmen's Bank testified that he calls every morning at the several banks for exchange paper; that such checks as he receives drawn on the Tradesmen's Bank, he takes to the bank, and if not good, returns to the bank where they were received; that he was porter to the Tradesmen's Bank in July, 1826; that he could not say that he received or presented the check in question, but if he did receive it on the *twelfth* day of July, 1826, at the Merchants' Bank, he presented it on the same day at the Tradesmen's Bank. Notice of the non-payment of the check was left at the defendant's residence on the *twelfth* day of July. The Lombard Association had no funds in the Tradesmen's Bank on the *eleventh* of July, the date of the check. On this evidence, the plaintiff rested. The defendant moved for a nonsuit, insisting that sufficient evidence of presentment had not been given, and if sufficient, that the presentment should have been on the *eleventh* of July. The nonsuit was denied. The defendant then adduced evidence to prove *payment* of the check to the plaintiffs on the *thirteenth* day of July. A witness was called by the plaintiffs, to explain the transaction on which the defendant relied as establishing his defence, who was objected to as interested, and who, on his *voire dire*, stated that he was interested, having given a written guaranty to the plaintiffs for the payment of the check in question; whereupon the *counsel* for the plaintiffs delivered the guaranty to the witness, and told him he might destroy it, which he did. The judge then declared him a competent witness, and he was sworn *in chief*. Other questions arose in this case, which are not noticed in this report. The jury found for the plaintiffs, and the defendant moved for a new trial.

*H. Maxwell,* for defendant.

*W. Slosson,* for plaintiffs.

*By the Court,* MARCY, J. Checks are considered as having the character of inland bills of exchange, and the holder thereof, if he would preserve his right to resort to the drawers and endorsers, must use the same diligence in presenting them for payment, and in giving notice of the default of the drawee, that would be required of him as the holder of an inland bill. *Cruger* v. *Armstrong,* 3 *Johns. Cas.* 5. *Murray* v. *Judah,* 6 *Cowen,* 490. As the defendant is sued as an endorser, the plaintiffs must establish a due presentment for payment, and a notice of non-payment to the defendant, before he can be made chargeable for the amount of this check. If the evidence makes out a presentment, it will not be contended that it was not seasonably made. The defendant passed it to the plaintiffs between two and three o'clock, P. M., on the eleventh of July, and it was presented, if at all, by twelve o'clock the succeeding day. If we consider that the check was drawn on a bank, and that the usual hours of business at banks close at three P. M., there should not be the least hesitation to pronounce it as seasonable presentment. Indeed it has been expressly decided that a check need not be presented on the day on which it is drawn. *Robson* v. *Bennett,* 2 *Taunt.* 396. But it is urged on the part of the defendant that the evidence does not make out a presentment, and that the judge at the trial erred in refusing the motion for the nonsuit. The facts are shortly these : The check was handed to the porter of the Tradesmen's Bank on the morning of the 12th of July, and was returned by the Tradesmen's Bank about noon of that day, with information that it was not good. The porter who must have taken it, has no distinct recollection of this particular check; but he speaks of his uniform course of business in relation to such paper. He was in the habit of receiving from other banks checks on the Tradesmen's bank ; he took them to the bank, and if not good, he returned them to the banks from which they were received. It is clearly established that on the 12th of

July, this check was handed to the porter of the Tradesmen's Bank, and he testified to his uniform course of business, that if he had the check in question, he took it to the Tradesmen's Bank, and if it was not received as good, he returned it. It was in fact returned by that bank as not good to the plaintiffs, and they gave due notice to the defendant of the refusal of the drawee to pay. It was also insisted that if the *porter* made the demand it was not available. The plaintiffs, being a body corporate, act necessarily by agents; the *porter* of the Tradesmen's Bank was their agent for the purpose of presenting the check and demanding payment. It was committed to his hands for the purpose undoubtedly of having it allowed to them in their account with the Tradesmen's Bank, and his presentment of it for that purpose, and the rejection of it as not good, was as effectual in law as if it had been presented by any of the plaintiffs' officers for payment. 18 *Johns. R.* 230. 1 *Pick. R.* 401.

I believe it was not contested on the argument that the writing of the initials of the defendant's name was not sufficient to charge him as an endorser. Such an objection could not have gone to the right to recover on the money counts; nor do I view it a good defence to the count on the check against the defendant as an endorser. I am clearly of opinion that the proof on the part of the plaintiffs was abundantly sufficient to carry the cause to the jury, and consequently, that the motion for a nonsuit was properly denied.

The next ground on which the application for a new trial rests, is the decision of the judge in favor of the competency of the witness, who had given a guaranty to the plaintiffs for the payment of the check on which this suit was brought; and who, on his *voire dire*, admitted his interest by reason of such guaranty. It is supposed by the counsel for the defendant that the destruction of the instrument did not destroy its obligatory force, and that, without a release, the plaintiffs could maintain an action thereon against the witness. Where the party, to whom an instrument of guaranty is given, delivers it to the maker, with express permission to destroy it, there is an end, in my opinion, to the contract which was consummated by the execution of that instrument; it must be adjudged

to be rescinded by the agreement of the parties. Such is
the effect of the delivery of the guaranty to the witness, if
the act of the *counsel* is to be considered as the act of the
*plaintiffs.* To bind the plaintiffs, the defendant contends that
it should have appeared that an express authority was given
to the counsel to deliver up the instrument. Such an au-
thority is to be inferred from his possession of the instrument,
the capacity in which he was acting, and the object which
was to be accomplished by his act. I conclude, therefore,
that if the witness had no other interest than what was crea-
ted by the guaranty, it was effectually removed by the vol-
untary surrender of the instrument and its subsequent de-
struction.

New trial denied.