Gardiner, Ch. J.
The only question is whether the evidence in connection with the pleadings established a case proper for the consideration of a jury. The contract stated *110 in the complaint is somewhat peculiar in its character. It binds the defendant for an indefinite period to supply the plaintiff exclusively with newspapers for a particular district, for a stipulated sum, and of course to withhold them from all others during the existence of the agreement; while the carrier was at liberty to abandon the contract at pleasure, without subjecting himself to any liability to the editor for his non-performance. The defendant was obliged to keep up his establishment and continue the paper, although his own interest and that of the public might require its discontinuance ; while the plaintiff could treat the privilege of distributing the newspaper, as property, and dispose of it at will, and transfer all his rights to an assignee, without the assent and against the will of the proprietor. It must be concluded that there was no mutuality in such an arrangement. No express contract to that effect is pretended, and i fc is to be implied, if made, from the fact that the supposed privilege of vending or serving the paper in a particular district was the subject of sale and purchase among the carriers themselves, to the knowledge of the defendant. These sales, it is obvious from the circumstances disclosed, were of the probability pr chance that the business of the establishment would continue to be conducted as theretofore, and that the assignee would stand upon the same footing as the previous carrier, because it was indifferent to the defendant what person purchased his paper and supplied a given.district, provided the number of copies disposed of was the same. There was nothing in all this resembling a contract for an exclusive privilege between the proprietor and the carrier. The nature of the business repels any such presumption. It was conducted upon the cash system. The paper was sold, as the witnesses inform us, to whoever would purchase, and the vendor had the right to give or sell his property, like an article pf merchandise, whenever or wherever he could find a purchaser. That one carrier would abstain from encroaching on the district of another is probable, for such was their *111 interest; but that no such respect was paid to their supposed rights by others is apparent from the fact that boys were in > the practice of vending the papers all over the city. No complaint on this account was ever made to the proprietor of the paper. This would have been the natural course had the carriers supposed that their privileges rested in contract. But the only method of ridding themselves of this interference which seems to have occurred to them, was, as one of them stated, to “ scare them off.” There can be no doubt that these boys had as perfect a right to sell their papers in the fifteenth ward as the carrier or the proprietor of The Herald himself. ¿ -
On the whole, I agree fully with the learned judge who presided at the trial, that there was no fact established by the answer or the evidence from which a contract, could be implied according to the allegations of the plaintiff. The complaint was therefore properly dismissed, and the judgment of the superior court should be affirmed.
Parker, J.
It is not claimed that there was any express agreement with the defendant, nor does it even appear that he had any personal knowledge of the transaction between Winyates and the plaintiff. But a contract is sought to be implied from the fact that the defendant’s agents at the office continued to deliver papers to the plaintiff as the carrier for the fifteenth ward, on the same terms as to his predecessor, for more than two years after the route was purchased from Winyates. It is insisted that this was a recognition of a right in the plaintiff to the route, and that it was a violation of that right to employ another carrier upon the route in the place of the plaintiff. The fact that the plaintiff paid $575 for the route imposed no obligation upon the defendant. The defendant was in no respect a party to that contract, but was in fact* entirely ignorant of it; and unless Winyates himself had some right as against the defendant, which is not shown, he could transfer none *112 to the plaintiff. If it was in Winyates a mere privilege or expectation, or if it was even a contract, terminable at the pleasure of the defendant, it could certainly be no more in the plaintiff. It established nothing as against the defendant to show that there was a usage, as between earners, by which the routes were sold by one carrier to another. A mere privilege may be the subject of sale, if the purchaser is willing to run the risk of failing to enjoy it. Nor can such a mere privilege be transformed into a legal right for a fixed term of time, because it was the practice at the defendant’s office to book the purchaser as the carrier, and to continue thereafter to deliver to him the papers for the route. That shows a recognition of a person as carrier for the time being, but nothing more. It implies no intention to continue him, except at the pleasure of the publisher.
There could be no contract in such case without mutuality. Suppose the plaintiff had refused to carry any longer, will it be contended that he would have been liable in damages to the defendant for such refusal ? If there was an agreement, it was as binding upon the plaintiff to receive and distribute papers, as it was upon the defendant to supply them ; or suppose the defendant had concluded to stop the publication of his newspaper, will it be contended that the plaintiff could have had an action against him for not continuing to furnish him papers ? His loss in that case would be as great as in this, and would be equally the breach of an agreement, if there was in fact any agreement to continue to supply the plaintiff with newspapers. If there was an agreement, when was it to end? The plaintiff had enjoyed the profits of the place for two years. Is it claimed there was no limit to the extent of its duration ? If there was any agreement proved, we should look to the contract itself for its terms, or if a general contract was established, we might look to usage to limit its duration. But when there is no contract proved, nor any usage implying one, we need *113 hardly inquire what would have been the terms and limit of a contract, if one had been made.
The plaintiff’s counsel has referred us to the English law, by which a servant is entitled to one month’s notice before he is discharged. But that rule rests entirely upon custom. Littledale, J., said, in Williams v. Byrne (2 Nev. & Perry, 139): “The case of a menial servant has been put, who may be discharged at a month’s notice, but that is not a matter of law. It is a custom that might be put on the record as a fact, and the jury would find that it existed.” And in that case the court held that the month’s notice was not applicable to a reporter for a newspaper, no such custom being proved applicable to reporters. And in Fawcett v. Cash (5 Barn. & Adol., 904), the court held it was not applicable to a warehouseman who was dismissed from his employment; and in Beeston v. Collyer (4 Bing., 309), it was held not to be applicable to clerks or servants in husbandry. All these decisions were made on the ground that no custom, as to such classes of persons, had been proved. But these cases can have no possible application; for conceding even that a contract of hiring was in this case established, the plaintiff has failed to prove any custom as to its extent or as to the notice to which the plaintiff would have been entitled.
Whether the plaintiff is to be regarded merely as a daily and favored wholesale purchaser of papers for distribution among his subscribers, or as the agent of the defendant for the purpose of such distribution, is I think entirely immaterial. In neither case had the plaintiff any legal right to continue to act in such capacity against the will of the defendant, and in either case I think it was the right of the defendant, as well as of the plaintiff, to terminate their business relations at pleasure.
The judgment of the supreme court must be affirmed.
The whole court concurring,
Judgment affirmed.