Roberts, Assignee, v. Austin Corbin & Co. *et al.*

1. Bill of exchange: CHECKS. It seems, that a draft drawn by one banker upon another in a different State, having funds of the drawer on deposit, in favor of a third person as payee, is to be regarded simply as a banker's check, and not as a foreign bill of exchange.

2. —— RIGHTS OF HOLDER: BANKRUPTCY OF DRAWER BEFORE ACCEPTANCE. The holder of such a check may maintain an action thereon, before acceptance, against the drawee thus having the funds of the drawer in his hands, and wrongfully refusing to pay the same; and the general assignment of the drawer for the benefit

| 26 | 315 |
| 78 | 431 |

| 26 | 315 |
| 79 | 276 |
| 79 | 356 |

| 26 | 315 |
| 87 | 198 |

| 26 | 315 |
| 99 | 208 |

| 26 | 315 |
| 112 | 748 |

| 26 | 315 |
| e121 | 108 |
| 121 | 361 |

| 26 | 315 |
| 128 | 596 |

| 26 | 315 |
| 129 | 378 |

| 26 | 315 |
| 132 | 56 |

| 26 | 315 |
| 144 | 195 |

of his creditors after drawing the check but before the same is presented, will not invest his assignee with the right to the money represented by the check nor affect the rights of the payee thereto.

*Argu.* 1. PROMISE OF ONE TO PAY ANOTHER. In cases of simple contracts, if one person makes a promise to another for the benefit of a third, the latter may maintain an action upon it.

*Argu.* 2. IMPLIED PROMISE. There is an implied promise on the part of the bank receiving deposits to pay out the same upon the checks of the depositor, and when the depositor indicates by his check the person to whom the money shall be paid, such implied promise enures to the person thus indicated.

WRIGHT, J., *dissenting.*

3. Assignment for the benefit of creditors: RIGHTS OF ASSIGNEE. The assignee in a general assignment for the benefit of creditors, takes the property of his assignor subject to all the equities existing against it in favor of third parties. He merely stands in the shoes and succeeds only to the rights of his assignor.

4. Practice: CHANGE OF ORDER IN SUPREME COURT. Where a case has been reversed and remanded to the District Court, the Supreme Court will not revoke such order and enter judgment there on the motion of the party claiming to be entitled thereto, when not made until several months after such order and not until after the time in which the other party might have filed a petition for a rehearing has expired.

5. —— In analogy to the rule applied to the District Court, the entries and orders made at a previous term of the Supreme Court should be altered or changed only to correct an evident mistake.

*Appeal from Dubuque District Court.*

WEDNESDAY, JANUARY 27.

HENRY MARKELL had for some years been engaged in business at Dubuque, as a banker, under the name of H. Markell & Co. He kept an account with Austin Corbin & Co., bankers in New York city, upon whom he was in the daily practice of drawing drafts and selling them to his customers and others in the usual way of business.

During the latter part of December, 1867, and the first part of January, 1868, he thus sold to Glover & Smock, Aultmann, Miller & Co., and the other interve-

nors herein, certain checks or bank drafts upon Austin Corbin & Co. for various sums, the same being fully set forth and described in the transcript. These drafts were duly presented to Austin Corbin & Co. within a reasonable and proper time, and payment thereof demanded. In the meantime, Austin Corbin & Co. had received notice by telegraph that Markell had made an assignment for the benefit of creditors to T. C. Roberts, the plaintiff herein, and being uncertain what their duty was in the premises, they refused to pay the drafts as presented, until the rights of the respective parties should be settled by the decision of a proper tribunal. They had at this time to the credit of H. Markell & Co.. the sum of $3,322.12. The assignment to plaintiff was made on the evening of January 6, 1868, and a copy thereof, with the the schedule attached, is set forth in full in the transcript.

As Austin Corbin & Co. persisted in their refusal to pay either the draftholders or the assignee until the rights of the parties had been settled by an appeal to the courts, an agreement was entered into, whereby the funds were placed in the hands of the Merchants' National bank of Dubuque, as agent for Austin Corbin & Co., and this suit was instituted for the purpose of settling the question at issue. The case was tried before the court, without a jury, and after hearing the evidence and argument of counsel, the court, in writing, found as follows, upon the questions of law and fact, to wit:

" Trial in this case had before the court without jury. From the evidence, and stipulation, and agreements of the parties, the court finds the following facts:

" 1. Henry Markell carried on business at the city of Dubuque, in the State of Iowa, as a banker, under the name and style of H. Markell & Co., before and during the year 1867, and up to the time of the assignment to T. C. Roberts, the plaintiff, as hereinafter stated.

" 2. The defendants, Austin Corbin & Co., are a firm of bankers doing business in the city of New York, in the State of New York, during the same time, and Henry Markell kept a deposit account with said New York firm in his business name, and was in the habit of drawing his checks to his customers on the defendants, against such deposit account.

" 3. That the intervenors, Glover & Smock, M. S. Robison and others, were customers of the said Henry Markell at Dubuque, and kept their bank accounts at his banking house, and in the course of their business, respectively bought of the said Henry Markell, in the usual manner of depositors at his banking house, the checks upon which they respectively claim in their pleadings, which were issued to them in the name of H. Markell & Co. The drafts to the intervenors and others, so drawn, in the aggregate, amount to $5,881.82, all of which were so bought and drawn at various dates between the 9th day of December, 1867, and the sixth day of January, 1868, inclusive.

" 4. That, on the 6th day of January, 1868, the said Henry Markell made, executed and delivered to the plaintiff, T. C. Roberts, a general assignment of all his property and effects as well those in the name of H. Markell & Co., as those in the name of Henry Markell, for the benefit of his creditors, and on the mórning of the 7th day of January, 1868, the plaintiff, T. C. Roberts, notified the defendants at New York, by telegraphic despatch, of the fact of such assignment, which notice was duly received by them.

" 5. That none of the checks so as aforesaid sold to the intervenors, and now claimed upon by them respectively, were presented for payment to the defendants at their banking house in New York, until after the execution and delivery of said general assignment to the plaintiff, and notice thereof to the defendants as aforesaid.

" 6. That, at the date of said assignment and notice as aforesaid, there was in the hands of defendants a balance of $3,322.12 on the deposit account of H. Markell & Co., subject to his order, which still remains in their hands to await the decision of this case.

" 7. That when the checks aforesaid sold to the intervenors, were presented after the assignment and notice as aforesaid, payment was refused, to await such decision. There are some other facts in the case as presented by the counsel on trial, but none material to be stated, to cover the ground of the decision in this case.

" First, upon the facts the plaintiff claims that the intervenors have no cause of claim in this action because the paper upon which they found their interventions, respectively, is in law a foreign bill, and no cause of action lies against the defendants as drawees, because they have not accepted the same.    But I find as a question of law, that such paper is not to be regarded as a foreign. bill, but as a banker's check, and subject to the same rules as ordinary bank checks, and that a cause of action arose thereon, if, on presentation, the defendants had funds of the drawer on deposit. .

" Second, the intervenors claim that against Henry Markell or his assignee, while the funds remain in the. possession of the defendants, the drawing and delivery of the checks claimed upon by them, was an assignment of so much of said funds as such checks called for from the date of their delivery, and that the aggregate of such checks delivered to the intervenors and others in the case, being more than the whole amount of the balance of the deposit, they constituted an assignment of the whole of such fund from H. Markell, and he could not by any subsequent assignment, as in this case to the plaintiff, interfere with such fund, or if he attempted to do so, the assignee . could only take subject to the prior equity of

the intervenors thereto.   But I find as a question of law, that a check on a banker does not of itself create any special lien in law or equity upon any funds in the hands of such banker before presentation, and any purchaser in good faith and for value, may acquire a good title to such fund, provided he acquire possession under such purchase prior to presentation of such check.   That an assignee for the benefit of creditors is such purchaser, or perhaps agent for the creditors, generally, who, as beneficiaries under the act of assignment, become the owners of the property assigned through their agent, and are properly purchasers for value of the property assigned; and that consequently in this case the assignment to T. C. Roberts, the plaintiff, operated as a specific transfer of the whole fund to him as such assignee, and it no longer remained the funds of H. Markell & Co., subject to the check or draft of such party, and could not be appropriated by the defendants, after notice of such transfer to plaintiff by assignment to him, to pay the checks of H. Markell & Co., presented afterward, though drawn and dated before.

" Consequently, there must be judgment for plaintiff against the defendants; and the petitions of the intervenors must be dismissed with costs and execution.

" To which decision the intervenors respectively by their counsel except, and the same is allowed."

The appellants, who are the holders of the several checks or drafts, and are the intervenors in this action, make the following assignment of errors:

1. The court below erred in finding as a question of fact, that at the date of said assignment and notice as aforesaid, there was in the hands of defendants a balance of $3,322.12 on the deposit account of H. Markell & Co., subject to his order, which still remains in their hands, to await the decision of this case.

2. The court below erred in holding as a matter of law

that an assignee for the benefit of creditors is a *bona fide* purchaser for value, and that the creditors, who are the beneficiaries under the deed of assignment, become the owners of the property assigned, and are properly purchasers for value of the property assigned.

3. The court erred in holding as a matter of law, that the assignment made by H. Markell to T. C. Roberts, the plaintiff herein, operated as a specific transfer of the whole fund to him as such assignee, and that the funds in their hands could not be appropriated by the defendants after notice of such transfer, to pay the checks of H. Markell & Co., presented afterward, though drawn and dated before.

4. The court erred in holding that the plaintiff had the superior right to the funds in the hands of Austin Corbin & Co.

5. The court erred in holding that Austin Corbin & Co., were not liable to the intervenors for the payment of the drafts held by them, so long as they had funds in their hands to meet such drafts.

6. The court erred in giving judgment for plaintiff.

*Shiras & Van Duzee* for the appellants.

*Roberts & Fouke* for the appellee.

COLE, J. — This cause has been well and fully presented, both by elaborate printed briefs and oral argument at bar. Upon the question as to the character of the instruments under which the intervenors claim, — that is, whether they are foreign bills of exchange or merely bankers' checks, the counsel do not differ, but agree in treating them as the latter. The counsel for the plaintiff and appellee, however, add, that, being checks, they "are simply inland bills of exchange payable on demand," citing *Merchants Bank* v. *Spicer*, 6 Wend. 443;

1. BILL OF EXCHANGE: CHECKS.

*Harker* v. *Anderson*, 21 id. 373; *Chapman* v. *White*, 6 N. Y. 412, and other authorities. There is no assignment of error upon the point that the court found that said instruments were simply bankers' checks. This may therefore be taken for granted.

One or two other matters may here be noticed in order that we see distinctly the precise case before this court for decision. The drawer of the checks held by the intervenors was a banker doing business in the city of Dubuque, and the drawees were also bankers doing business in the city of New York, and with whom the drawer kept his deposits for the purpose of supplying his customers with exchange on New York by drawing his checks against such deposits in such sums as they might want. The drawees have not at any time and do not now object to paying the checks in the sums named in each and to the several holders thereof, to the extent of the money in their hands, but only refuse to pay because they cannot safely pay, either to the assignee of the drawer, or the holders, until the respective rights of such parties are judicially settled. This, then, is not a controversy between the holders of the checks and the drawees, or bankers, having the deposits, as to the legal right of the former to sue the latter at law prior to acceptance; but it is a controversy between the assignee of the drawer of the checks and the holders of them.

2. —— rights of holder: assignment of drawer before acceptance.

As the view we entertain of the law governing the rights of the holders as against the drawees, necessarily enters into and forms a part of the basis upon which our opinion rests, it is proper that we state them briefly.

Whether the holder of a check can maintain an action at law thereon against the banker-drawee having funds of the drawer to pay the same prior to acceptance, is a question about which the authorities are not agreed. It was said, as late as in 1857, by HUNTINGTON, J., in deliver-

ing the opinion of the Superior Court of Suffolk county, Mass., in the case of *The National Bank* v. *Eliot Bank*, denying the right, that no case can be found in the books directly deciding the question; and it was said in the same case, in an elaborate *dissenting* opinion by ABBOTT, J., affirming the right, that no precedent exactly in point to sustain him could be found, and none directly in point against him. See *National Bank* v. *Eliot Bank*, 5 Am. Law Reg. (Oct., 1857) 711.

And it was said by JOHNSON, J., in delivering the opinion of the Court of Appeals of South Carolina, in February, 1860, that the court was aware of but one single decision upon the question (*National Bank* v. *Eliot Bank*, *supra*) either in this country or abroad. And in an opinion, evidently prepared with great care and research, that court holds that the action may be maintained (O'NEALL, Ch. J., *dissenting*). *Fogarties & Stillman* v. *State Bank*, 8 Am. Law Reg. (May, 1860) 393 ; same case in 12 Rich. Law (S. C.) Rep. 518. It has, however, been decided that a check for a part of the drawer's funds in a bank constitutes no assignment of that part of such funds, until presented for payment and accepted by the bank. *Ballard* v. *Randall, etc.*, 1 Gray, 605, decided in 1854, and citing *Gibson* v. *Cooke*, 20 Pick. 15 ; see also *Dana* v. *Third National Bank, etc.*, 13 Allen, 448 ; *Lloyd* v. *McCafrey*, 46 Penn. St. 410 ; *St. Johns* v. *Honeaus*, 8 Mo. 383; *Chapman* v. *White*, 6 N. Y. 412, *supra*, and other cases.

Various reasons are assigned why the holder of such check cannot maintain his action thereon against the drawee who refuses to accept or pay. One, that there is no privity between such holder and the drawee. 2 Pars. on Bills and Notes, p. 333; another, that such right of action in each holder of a check would render a banker, having the deposits of one person, liable to numberless

suits by as many holders. *Mandeville* v. *Welsh*, 5 Wheat. 277. Another, that the depositor or drawer of the check has his right of action for damages to his business or credit, by reason of a wrongful refusal of the drawee to accept, and that such drawee cannot be liable to two actions for the one wrong. 1 Pars. on Bills and Notes, 61, 62; *Marzatti* v. *Williams*, 1 B. & Ad. 415. And another perhaps, that even the assignment of a chose in action does not invest the assignee with a right of action in his own name; and there may be others.

Let us look at these reasons for a moment. As to the objection of want of privity, although at one time there was some conflict of opinion, it is now laid down by text writers to be settled, that in cases of simple contract, if one person makes a promise to another for the benefit of a third, the latter may maintain an action upon it, though the consideration did not move from him. 2 Greenl. on Ev. § 109, and authorities cited in note 1. Nor does it make any difference in principle that the beneficiary or party suing upon the promise, was unknown to the promissor. This want of knowledge by the promissor as to who will be the party enforcing the promise, exists in the case of every negotiable instrument. The promissor having made his promise upon sufficient consideration, whether it is in writing, verbal, or implied, may, and ought to be, required to perform it according to the tenor of it, and not otherwise, to the party becoming entitled thereto.

As to the objection of liability to several parties who may hold the checks, instead of to the one depositor, it should be remembered, that, by the custom of merchants and bankers every where, alike well known to farmers, mechanics, merchants, bankers and courts, the party receiving the deposit, does so upon either an express or implied promise to pay the same upon presentation of

the checks of the depositor, by whomsoever presented. If, therefore, he is made liable to numberless parties, it is because of his promise made for their benefit, and known to them, and which he has failed to perform. *Munn* v. *Burch et al.* 25 Ill. 35.

And if it be true, as it doubtless is, that the banker is liable to the depositor for the damages resulting to him by reason of the failure to pay his checks, this liability ought not, upon principle, to exempt him from the performance of his promise or undertaking to pay the checks; the holder may enforce the promise, while the depositor recovers nominal or special damages for the breach of it. *Rollin* v. *Stewart*, 14 C. B. 595. Parties are often liable to two actions at law by different suitors for one and the same wrongful act. A trespasser upon real estate may be liable, for one trespass, to two actions, — one by the tenant, the other by the reversioner. So a party promising to discharge an incumbrance and failing to do so, may be liable to an action by the promisee and also to an action by the party holding the incumbrance. These are but illustrations of a large class of cases, both in tort and upon contract, where a party may be liable to two actions by different parties for the same wrong or upon a breach of the same promise.

As to the last objection, that an assignee of a chose in action cannot maintain an action in his own name, it may be answered, that our statute already gives the right. Rev. § 2757. So also in New York. Howard's Code, § 111, p. 132. Such is the rule in many other States.

Without further elaboration or answer to the objections against the right of a holder of a check to maintain his *Argu. 2: implied promise.* action against the drawee having funds and wrongfully refusing to pay the same, we may state that in our view such holder can maintain his action. This view is based upon the implied promise of the party

receiving such deposits, to pay out the same upon the checks of the depositor. Where the depositor has indicated by his check the person to whom the money shall be paid, the promise of the party receiving the deposit enures to the person thus indicated, and he may enforce it; and also upon the following authorities: *Weston* v. *Barker*, 12 Johns. 276; *Shepherd* v. *Shepherd*, 7 Johns. Ch.; *Morton* v. *Naylor*, 1 Hill. 583; *Cutts* v. *Perkins*, 12 Mass. 209; *Robbins* v. *Bacon*, 3 Greenl. 346; *Mandeville* v. *Welch*, 5 Wheat. 277; *Adams* v. *Robinson*, 1 Pick. 461; *Clarke* v. *Adair*, cited by BULLER, J. 4 T. R. 343; *Bradley* v. *Root*, 5 Paige, 632; *Phillips* v. *Stagg*, 2 Edw. Ch. 108; *Rowe* v. *Dawson*, 1 Ves. Sr. 331; *Yeates* v. *Groves*, 1 Ves. Jr. 280; *Watson* v. *Duke of Wellington*, 1 Rus. & M. 602; *Lett* v. *Morris*, 4 Sim. 607; *Carnegie* v. *Morrison*, 2 Met. 394; *Hall* v. *Marston*, 17 Mass. 579; *Tadlock* v. *Hains*, 3 Durnf. & E. 91; *Forgarties* v. *State Bank*, 12 Rich L. Rep. (S. C.) 518; *Munn* v. *Burch et al.* 25 Ill. 35.

Only the last two cases are directly in point. The other cases decide points more or less illustrative of the principle upon which the two cases rest. The cases in 1 Ves. Sr. and 1 Ves. Jr. and 1 Russ. & M. were controversies with assignees. Of course, this doctrine that the payee or holder may have his action against the drawee, is limited to cases of *checks*, and has no application under the principle whereon it is based, to bills of exchange.

But, as before premised, this is a controversy between the assignee of the drawer, and the holders of the checks. The drawee of the checks makes no objection to paying them to the holders, but simply refers the question as to which of the claimants, the assignee or holders, are entitled to the money, and avers his willingness to pay to the party entitled thereto.

Roberts v. Austin Corbin & Co.

An assignee takes the property of his assignor, subject to all the equities existing against it in favor of third

3. ASSIGNMENT FOR BENEFIT OF CREDITORS: rights of assignee.

parties. This is the general and now well settled rule. See Burrill on Assignments, 483, 484, and authorities cited in the notes. Neither the assignee nor the creditors whom he represents are purchasers for a valuable consideration without notice as against prior equitable liens. *Haggerty* v. *Palmer*, 6 Johns. Ch. 437; *Knowles* v. *Lord*, 4 Whart. 500; *Walker* v. *Miller*, 11 Ala. 1067; *Clark* v. *Flint*, 22 Pick. 231 ; see also *Walker* v. *Miller & Co.*, 11 Ala. 1082; *Frow* v. *Downman*, id. 885; *In re* Howe, 1 Paige Ch. 127; *Luckenbrack* v. *Brickenstein*, 5 Watts & Sargt. 149; *McMenoney* v. *Femen*, 3 Johns. 82; *Reed* v. *Sands*, 37 Barb. (S. C.) 185. In other words the assignee stands in the shoes, and only succeeds to the rights, of the assignor. For the purposes of this suit, then, the assignee stands in the place of Markell, the drawer of the checks. Further than this, it must be remembered, that, under our practice, a party defendant (and these holders stand as such in this action) may set up as many defenses, both legal and equitable, as he may have. See Rev. § 2880. These holders of the checks have set up all the facts connected with their paying for and receiving the checks and their failure to procure the money on them. In other words they have presented their equitable as well as their legal claims, and it is upon these together that their rights are to be determined.

The controversy, then, is simply this: Markell having received full consideration therefor draws his checks upon his banker with whom he has funds on deposit for their payment. Afterward, and before their presentation, Markell (by his assignee), notifies the drawee to withhold payment. This is done without any claim of wrong on the part of the drawees, and without any pretense or

suggestion against their just and equitable right to the money specified in the check.

Now, as between Markell on the one hand, and the holders of these checks on the other, in whose favor are the equities? No person could hesitate for a single moment in declaring that the money (which in effect has been brought into court for the benefit of the party entitled thereto) should be paid to the holders of the checks rather than to Markell, who has once received from them the money which the checks represent. If, as between Markell and the holders, the latter would be entitled to the money, then, since the assignee of Markell stands in his shoes and succeeds only to his rights, the holders of the checks would be entitled to the money as against the assignee, and this, too, regardless of whether the holder of a check can maintain his action against the drawee, or whether a check operates as an assignment *pro tanto* of the deposit, as hereinbefore discussed.

There are one or two facts apparent from the transcript, having some bearing upon the whole case, but which are not set forth specifically in the finding of facts, but are embraced in the general language used in the closing part of the seventh finding as set out in the statement. It appears from the schedule of the liabilities of Markell annexed to the assignment, that he was indebted to Corbin & Co. a little over $2,000, the sum stated being just the difference between the sum now in controversy, and the amount of the unpaid drafts drawn by him upon them prior to the assignment. And in the schedule of assets, no claim against Corbin & Co. is made. Now, while it may be fully true that a failure to schedule either liabilities or assets, cannot of itself affect the rights of parties in relation thereto; yet such facts may be considered in determining the construction and effect of the instrument of assignment. So that it may

be proper to look at the schedules of assets and liabilities in this case, for the purpose of ascertaining whether the assignor intended to transfer any claim upon Corbin & Co. to his assignee; or whether he recognized the fact, that he had by his checks already transferred his claim upon them so that in point of fact he had none to transfer to his assignee. If the instrument of assignment did not profess to transfer the claim againt Corbin & Co., and there was no intent to transfer it, nor any right in equity existed to transfer it, then it is very clear that the assignee did not acquire any legal or equitable title to any supposed claim of Markell upon Corbin & Co., and therefore he could not maintain this action.

Without resting our determination of the cause, upon this latter ground, we prefer to and do place our decision upon the particular and special facts and circumstances of the case, and hold, that, as between the plaintiff and the holders of the checks, the latter are entitled to the amount in the hands of Corbin & Co. The judgment of the District Court is therefore

Reversed.

WRIGHT, J., dissenting.

## JUNE 23, 1869.

WRIGHT, J. — The facts of this case and those transpiring in the court below, appear from the foregoing opinion. And now, on this day, the respondents and appellants (intervenors) move us to enter judgment in their favor against Corbin & Co. for $3,320, and against plaintiffs for costs. The grounds of the motion are, first, that, as the facts were *found specially and entered of record*, this court should enter the judgment which it is found should have been entered in the court below; second, from the facts and stipulations of the parties, the law is with them, and,

4. PRACTICE: change of order in Supreme Court.

hence, they are entitled to judgment. If this rule cannot be made, then it is asked that the *court below* be directed to enter judgment in their favor; because they are entitled to it from the foregoing opinion, and because no other question remains to be litigated between the parties. This motion being resisted, I am directed to announce the unanimous opinion of the court, that it should be overruled.

It will be seen that the case was decided in January last, and at the close of the December Term, 1868, for that was finally adjourned February 2, 1869. The order made was for the reversal of the case, and that the court below proceed therein in a manner not inconsistent with the opinion. In other words, there was nothing different from the usual order in cases where error is found and the cause reversed. Immediately thereafter the proper *procedendo* was issued and the entire case remanded to the court below. The sixty days allowed by our rules for filing a petition for rehearing has elapsed, and nothing of the kind has been asked by either party. But now, more than four months after the cause has been remanded, and after the close of the term at which judgment was entered, we are asked to enter a new judgment and effectually and conclusively close and cut off plaintiff's right to the money here in controversy.

If the case had been tried to a jury and all the evidence certified to us, it would not be claimed that it was our duty to enter judgment here upon finding that the verdict should have been for the appellant. And this, though we were moved thereto immediately upon the filing of the opinion. In such a case, the cause would be remanded for retrial. And this, in the opinion of a portion of the court, would be the order where the facts have been found, "in an ordinary proceeding," by the court under section 3088 of the Revision. But, however

this may be, we unite in the opinion that this motion comes too late. If, at any time, the order could be asked as a matter of right, it cannot certainly be, months after the cause was finally disposed of and remanded to the court below. For if so, then as well years as months after the decision of the case. Granting the duty and power to enter the judgment at the proper time, we cannot now know but that, for good and sufficient reasons, we esteemed it proper (Rev. § 3536) that the cause should be remanded for retrial. Under the section referred to, we *may*, in a proper case, "render such judgment as the District Court should have done," but we are not compelled to do so.

This is true even in cases of affirmance. Rev. § 3539. And it would be a most dangerous practice to allow a party to come at a succeeding term (and if it can be done at the next, then at *any* succeeding term), after all the facts and circumstances influencing the order made and leading to it have passed from the judicial memory, and ask for a new judgment — a judgment which, if asked at the appropriate time, might possibly have been resisted upon grounds the most cogent and irresistible. And this view is especially pertinent when it is remembered that plaintiffs (the appellees) relying, as we may reasonably presume, on the right to be again heard in the court below, made no application to be reheard in this court. This was their right. Rev. § 3543. And now if this order is made (the sixty days for filing a petition for rehearing having expired), they are effectually deprived of any remedy, however great the injury.

In analogy to the rule as applied to the District Court, the better view is, that entries or orders made at a previous term shall only be altered or changed to correct an evident mistake (Revision, § 2667); and especially so, when applied to cases like that before us, when it is

remembered that appellants can go to the District Court, invoke its action, and have the same, whether upon retrial or otherwise, reviewed here. They are by no means without remedy.

All that has been said is as applicable to the order asked to the court below, as to that which seeks a judgment in this court. Appellants, as a matter of right, are not entitled to either order. The case is in the District Court. If entitled to judgment as a matter of right without a retrial, and this shall be refused in the court below, they can have that order examined here. If such judgment is rendered, then the other party can be heard upon appeal. And just here, where the record leaves and places the case, we believe that the law contemplates that the parties shall be heard without further action on our part.

What this action should be, is not for us to suggest, further than has been done by the opinion and the process of the court, until the question shall come regularly before us.

The motion is denied, because, while it is the policy of the law to put an end to litigation, it is equally its policy and command that a party shall assert his right at the proper time. He may lose, and justly, too, by delay, quite as much as he might gain by a diligent assertion of his rights.

                                        Motion overruled.