## SIMON and others *v.* OPENHEIMER and others.

## AYRES *v.* HAMRICK, Assignee, and others.

## OPENHEIMER, Sr., *v.* HAMRICK and others.

*(Circuit Court, S. D. Iowa, C. D.* May Term, 1884.)

1. MORTGAGE—NEGLECT TO RECORD DESTROYS LIEN AS AGAINST PARTIES WITHOUT NOTICE.

   The neglect of a mortgagee of a chattel mortgage to record the instrument within the time when he should have done so, through which neglect innocent parties have been led to intrust goods with the mortgagor, deprives the mortgage of its character as a prior lien as against such innocent parties.

2. SAME—RIGHTS OF A SUBSEQUENT MORTGAGEE.

   A second mortgage incumbers only the remnant left after satisfying the first; and the holder of a judgment, who defeats the first mortgage as against himself, comes in before the second mortgagee, up to the amount of the first mortgage.

In Equity.
*Wright, Cummins & Wright,* for Simon, Strauss & Co.
*O. B. Ayres* and *Mitchell & Dudley,* for O. B. Ayres.
*James D. Gamble,* for Allen Hamrick, assignee.

SHIRAS, J. During the early part of the year 1881, J. Openheimer and Eli Openheimer were partners in business at Knoxville, Iowa, under the firm name of J. Openheimer & Son. The son sold his interest to the father, who continued the business under the name of J. Openheimer. On the thirteenth day of April, 1881, the firm executed a chattel mortage upon their stock in trade to O. B. Ayres, in the sum of $2,000, and on the twenty-sixth of July, 1881, J. Openheimer executed a second mortgage upon the stock to Ayres, in the sum of $2,500, both mortgages being given to secure Ayres against

loss by reason of indorsements made by him upon notes of the mortgagors, which were discounted by the Marion County and Knoxville banks. Neither of these mortgages were filed for record in the recorder's office of the county until the twenty-seventh of December, 1881. On that day Openheimer executed a third mortgage upon the same stock of goods to his brother Eli Openheimer, Sr., to secure payment of three promissory notes, amounting in the aggregate to the sum of $2,752.37, and payable in June, September, and December, 1882. On the thirty-first of December, 1881, J. Openheimer executed a general assignment for the benefit of creditors to Allen Hamrick, who qualified under the provisions of the state statute, filing his bond and inventory in the district court of Marion county, Iowa, and took possession of the stock in trade covered by said mortgages. Up to the time of the execution of the assignment to Hamrick, the mortgagors had remained in possession and control of the stock covered by the mortgages, selling therefrom in the usual way of trade, and using the proceeds of sales as they deemed best.

On the sixteenth of January, 1882, Simon, Strauss & Co. brought an action at law against J. Openheimer, based upon indebtedness for goods sold, and recovered judgment in the sum of $5,537.54, which judgment is wholly unsatisfied. The complainants Simon, Strauss & Co., and the Marion County and Knoxville banks, and Eli Openheimer, Sr., filed their claims with the assignee. On the twenty-first of April, 1882, O. B. Ayres and Eli Openheimer filed separately their petitions in the district court of Marion county against Allen Hamrick, assignee, setting up the chattel mortgages executed to them, claiming a prior lien thereunder of the property in possession of the assignee, and asking that the assignee be required to pay in full the amounts due on the mortgages. The assignee filed answers to the petitions, contesting the validity of the mortgages. On the twenty-first of April, 1882, Simon, Strauss & Co. filed a petition in equity in the district court of Marion county, making Jacob Openheimer, Eli Openheimer, Sr., O. B. Ayres, and Allen Hamrick defendants, and setting forth that they, complainants, were judgment creditors of Jacob Openheimer; that the chattel mortgages held by Ayres and Eli Openheimer, Sr., were fraudulent and void as to them; that the assignee had possession of the mortgaged property; and praying that the mortgages be declared void as to complainants, and the property or its proceeds be applied in payment of the judgment in their favor. Simon, Strauss & Co. also intervened in the proceedings brought in the district court of Marion county by Ayres and Openheimer, and attacked the validity of the mortgages held by the petitioners.

In these three several proceedings—to-wit, the petitions filed by Ayres and Openheimer against the assignee, wherein Simon, Strauss & Co. had intervened, and the petition filed by Simon, Strauss & Co., as complainants, against Ayres, Hamrick and Openheimer—petitions

for removal of the causes from the state to the federal court were filed by Simon, Strauss & Co., the assignee uniting in such application in the case brought by Eli Openheimer, Sr. Upon the filing of the transcripts in this court, motions to remand, on ground of want of jurisdiction, were filed, and at the May term, 1883, were submitted to the court, and overruled by his honor, Justice MILLER. The issues were then completed, the evidence taken, and the causes submitted at one hearing.

Upon the argument, counsel for the mortgagees have ably presented anew the questions touching the jurisdiction of this court that were embraced within the motion to remand, submitted at the May term, 1883. It is not proposed to re-examine these questions at the present time. The ruling then made, being an adjudication thereof, must stand as the law of the case; and it having been then adjudged that these causes were properly in this court, the present examination will be confined to the other questions presented on the record.

Substantially the points at issue between the parties are: (1) Can the assignee, holding under the deed of assignment executed by the mortgagor, question the validity of the mortgages in the interest of the general creditors; or is such right confined to creditors having a lien on the property, or having judgment at law, with a right to perfect a lien upon any property that may be discovered? (2) Are the chattel mortgages executed by J. Openheimer to O. B. Ayres and Eli Openheimer void as against either the assignee, or Simon, Strauss & Co., judgment creditors?

From the evidence submitted it appears that the mortgages were given to secure an actual subsisting indebtedness, and they are therefore valid as between the mortgagor and mortgagees. When the deed of assignment was executed by the assignor, it conveyed to the assignee the equity of redemption belonging to the mortgagor, including the right to hold any surplus left after payment of the amounts due upon the mortgages. *Gimble* v. *Ferguson,* 58 Iowa, 414; S. C. 10 N. W. REP. 789. The evidence, therefore, does not develop a state of facts which enables the assignee to successfully contest the validity of the mortgages. The debts described in the mortgages being actually due from the mortgagor, the title passed by the execution of the mortgages, and the instruments were therefore valid and binding upon the mortgagor. Under these circumstances, the assignee stands in the same position as the assignor, under the statute of Iowa. He takes the property subject to all the rights and equities which the mortgagees could have asserted against the assignor. *Roberts* v. *Corbin,* 26 Iowa, 315; *German Savings Inst.* v. *Adae,* 8 FED. REP. 106; *Stewart* v. *Platt,* 101 U. S. 731; *Rumsey* v. *Town, post,* 558. Having been given to secure an actual indebtedness, the validity of the mortgages can only be questioned by a creditor who can show a superior right or equity, and who has taken the proper steps to assert the same by obtaining a lien upon the property, or a judgment

with the right to a lien, if property can be discovered. Wait, Fraud. Conv. § 73.

Simon, Strauss & Co. occupy' this position, and it is within their power to question the validity of the mortgages. By the bill filed in the cause by them begun as complainants, and by the petitions of intervention by them filed in the proceedings instituted by the mortgagees, they raise the question of the validity of the mortgages as against themselves. Upon this issue the evidence shows that the mortgages to Ayres were not recorded until December 27, 1881, having been executed and delivered,—the one in July and the other in April previous. During this time Openheimer remained in possession of the stock with the consent and knowledge of the mortgagee, selling from the stock in the usual course of his trade, and using the proceeds for purposes other than the payment of the mortgage debts, and he also bought on credit, between April and December, and mainly in August and September, from Hirsh, Mayer & Co., Kuhn, Nathan & Fisher, Cahn, Wampold & Co., Hart Bros., and Simon, Strauss & Co., goods to the amount of $5,674.23. The parties selling the goods had no notice or knowledge of the existence of the mortgages at the time of selling the same. The goods thus purchased were added to the stock covered by the mortgages; which stock, when it was taken possession of by the assignee, inventoried at $8,542.54. Under such circumstances, the mortgagee is estopped from asserting that he has, under his mortgage, a valid lien superior and prior to the rights of the creditors. Knowing that the mortgagor was dealing with the stock as his own, and that third parties would be justified in believing that the stock belonged to Openheimer, free from any lien, the mortgagee stands by and permits him to hold himself out to the world as the owner of the stock free from liens, and to buy on credit a very large quantity of goods, which were added to the stock and thereby made subject to the lien of the mortgage, as between the mortgagor and mortgagee. Having chosen to keep the knowledge of the existence of his mortgages from the public, when he should, in good conscience, have given publicity thereto, and having thereby misled the creditors into making large sales of goods on credit to the mortgagor, he should not now, when it is to his advantage, and to their injury, be allowed to assert that he holds a valid prior lien upon the stock of the common debtor, the larger part of which consists of the very goods sold by the creditors in ignorance of the existence of the mortgage.

Under the facts proven by the evidence, and under the rule laid down in *Crooks* v. *Stuart*, 2 McCrary, 13; S. C. 7 FED. REP. 800; *Argall* v. *Seymour*, 4 McCrary, 55, and *Robinson* v. *Elliott*, 22 Wall. 513, it must be held that the mortgages executed and delivered to Ayres are in fact fraudulent against Simon, Strauss & Co., and that the latter, as against Ayres and those claiming under him, are entitled to the proceeds of the mortgaged property.

The mortgage to Eli Openheimer, Sr., was executed December 27, 1881, and possession of the stock was taken by the assignee December 31st. It is not proven that there was any understanding between the parties thereto that would invalidate the mortgage, and the evidence fails to disclose facts which would justify the court in holding the mortgage void. It was promptly recorded on the day it was executed, and hence it must be held to be valid and binding.

The mortgage to Openheimer, by its terms, expressly provided that it was subject to the mortgages to Ayres, and only reached the surplus left after payment of the amounts due Ayres. In the proceeding brought by Openheimer to enforce payment of his lien he does not question or contest the priority of the mortgages to Ayres. All that he contracted for, and all that he claims, is to have the surplus left after payment of the Ayres mortgages applied to the payment of the debt due him.

It is a matter of indifference to him whether the sum needed to pay the Ayres mortgages is paid to Ayres or to Simon, Strauss & Co. Equitably, therefore, the amount that would otherwise be payable to Ayres or the banks, under the chattel mortgages, should be paid to Simon, Strauss & Co., and the surplus, or so much thereof as may be needed, should be paid to Eli Openheimer, Sr., in satisfaction of his mortgage.

It follows, therefore, that, in the case of *Simon, Strauss & Co.* v. *Jacob Openheimer et al.,* complainants are entitled to a decree declaring the chattel mortgages executed to O. B. Ayres to be void as against complainants, and that the sums otherwise payable to said Ayres and those claiming under him, in discharge of said mortgages, shall be applied upon the judgment in favor of complainants.

In the case of *O. B. Ayres* v. *Allen Hamrick et al.,* the intervenors, Simon, Strauss & Co., are entitled to a decree declaring and establishing their right to the fund claimed by Ayres.

In the cases of *Eli Openheimer, Sr.,* v. *Allen Hamrick, Assignee, et al.,* complainant is entitled to decree declaring his mortgage valid, the amount due thereon to be paid out of the surplus left after payment of sums adjudged to be paid to intervenors, Simon, Strauss & Co.