HUGHES AND BICKLE, PLAINTIFFS IN ERROR, V. S. J. M. KELLOGG, DEFENDANT IN ERROR.

**Practice in supreme court.** Motions to strike out part of the transcript of the court below, will not be entertained in the supreme court. Whatever objection is taken to the record, should be presented in the argument of the cause upon its merits.

**Practice : EXCEPTIONS.** To make exceptions to the charge of the court to the jury available to the party excepting, or to the ruling of the court in the refusal to give instructions asked for, or to the admission of testimony, the exceptions must be reduced to writing at the same term at which the trial took place.

**Payment.** K. sold a tract of land to H. and B., on the fourth day of December, and by agreement of parties the deed was deposited with W., a banker, who upon being paid the purchase money was to deliver the same to H. and B. On the fifth day of December H. and B. deposited with W., in part payment of the land, a check for one thousand dollars, drawn on him by G., who had money on deposit there. On the same day K. called at the bank, and received a certificate of deposit for the amount. K. was therefore credited with one thousand dollars on the books of the bank, and G's account charged therewith. On the sixth day of December W., the banker, failed. *Held*, that this was a sufficient payment by H. and B., and a satisfaction *pro tanto*, of the agreed consideration to be paid for the land.

THIS was an action brought in the district court of Otoe county, by S. J. M. Kellogg, the defendant in error,

against Hughes and Bickle. Upon a trial of the cause, a verdict being returned in favor of Kellogg, judgment was rendered thereon, and to reverse that judgment, Hughes and Bickle brought the cause here by petition in error. The facts fully appear in the opinion of the court. Mr. Justice Gantt, having been of counsel in the court below, did not participate in the decision of the cause in this court.

*E. F. Warren*, for defendant in error, moved to strike out the bill of exceptions, the same not having been reduced to writing during the term at which the trial took place, and cited the following cases: *Monroe v. Elbert*, 1 *Neb.*, 174. *Mills v. Simmonds*, 10 *Ind.*, 464. *Howard v. Burks*, 14 *Ind.*, 35. *Galbreth v. Gaskin*, 17 *Ind.*, 234. *Evanhart v. Hollinsworth*, 19 *Ind.*, 138. *Hicks v. Person*, 19 *Ohio*, 435. *Doe v. Brown*, 6 *Ohio State*, 12. *Kline v. Wynn*, 10 *Id.*, 223.

LAKE, CH. J.

The motion must be overruled. In cases brought to this court, the objections made to a record of the court below, should be presented to the court in the argument of the cause upon its merits. A motion to strike out a part of a record, is not good practice. It presents the cause to this court by piece meal. Such questions, when presented upon the argument, will be considered by the court in its determination of the cause. The motion is overruled, and the case set down for argument.

The cause then came on to be heard, and *Calhoun & Croxton*, for plaintiffs in error, contended as follows:

The verdict of the jury is not sustained by sufficient evidence, and is contrary to law. On these two points we refer to the evidence which clearly shows that Kellogg

selected and appointed Ware as his agent to hold the deed and receive the payment upon the land. Ware testifies that K. was twice in his bank on December 5, and " the certificate (ticket) was given to him the first time," that Kellogg came in the second time, about the time the bank closed. Ware says that the Odd Fellows had over $3,000 to their credit in his bank when the check was drawn and presented, and that he " heard Kellogg inquire of Farwell if Hughes & Bickle had deposited the money there." The certificate was given to him at his request, and the amount was put to his credit in the books at his request. " I was acting for Kellogg in the matter."

Ware received the check as the agent of Kellogg in payment of the $1,000, and Kellogg, with knowledge of all the facts, tried to sell his certificate to the Otoe County National Bank, and said the payment was made to him, and he had lost it, and never at any time repudiated the act of his agent in taking the payment on the check. The facts present a very strong case of recognition and ratification by Kellogg of the acts of his agent. But in this case the payment by check was accepted by Kellogg himself with knowledge of the circumstances, for Ware testifies " the certificate was given to him at his request, and the amount was put to his credit in the bank at his request." Hence, as Kellogg was advised on the 4th that the payment would be by such check, and on the next evening that the payment was made by such check, and as he afterwards went to the bank, and at his own request turned the amount so paid into a deposit to his credit, it is certainly true that in contemplation of law, the whole transaction was his own act, and carried with it the same effect as if he had received the check himself, and then went to the bank and made a deposit by it for that amount to his credit. The facts operate as an absolute payment to Kellogg of $1,000. The verdict is therefore not sustained by the evidence, because the proofs clearly show an abso-

lute payment of the $1,000 as recognized, accepted and declared by Kellogg himself, and for the same reasons it is clearly contrary to law.  But if the principal say or do something from which it may be inferred that he assented to the act of his agent, it will be a confirmation.  *Vanhorn v. Frick, C. S. & R.*, 93.  Or a subsequent recognition of an act done by an agent, or where by one who assumes to act as such, is binding on the principal, if made with knowledge.  And the confirmation may be by implication from the acts and doings of the principal.  *Byrne v. Doughty*, 13 *Geo.*, 46.

Again, if a principal does not disclaim the act of his agent who transcends his authority, he makes the act his own.  *Bredin v. Dubarry*, 14 *S. & R.*, 27.  Or receiving notice of the act of his agent without objection, will be a ratification.  *Shaw v. Nudd*, 8 *Pick.*, 9.  Or if the principal does not choose to affirm the act of his agent, "it is his duty to give immediate information of his repudiation.  The principal must, when informed, report within a reasonable time, or be deemed to adopt by acquiescence."  *Law v. Cross*, 1 *Blackf.* (U. S.) 539.

*E. F. Warren*, for defendant in error, argued the cause upon a brief prepared by *Isaac N. Shambaugh and J. W. Miner*, and in addition to the point made upon the motion to strike out the bill of exceptions, contended:

I.  Ware was the agent of both parties, but if he was the agent of Kellogg only, the result must be the same.  An agent authorized to collect a debt can only receive payment in money, unless otherwise instructed by his principal.  2 *Parsons on Contracts*, 615 *and note m. Story on Agency, Secs.* 98, 99, 181, 413.  *Ward v. Smith*, 7 *Wallace*, 447.

II.  Payment in a check is conditional payment only.

If the creditor receives the money on the check, it is payment, otherwise not. The holder is not bound by receiving it but may treat it as a nullity if he derives no benefit from it, provided he has been guilty of no negligence which has caused an injury to the drawer. 2 *Parsons on Contracts*, 623 *and* 624 *and notes m and n, and cases referred to.*

III.  The fact that Ware was a banker can make no difference in the rights of the parties. In the case of *Ward v. Smith*, before referred to, the agent was a bank and the bank received depreciated bank notes in payment of the debt, but it was decided by the Supreme Court of the U. S. that the receipt of such notes by the agent was not payment of the debt due the principal, and that he was not bound thereby.

IV.  But in no view of the case can this transaction be considered payment to Kellogg, as the bank was broke at the time and could not have paid the money if demanded, and Hughes and Bickle have lost nothing thereby. The check was worthless when drawn. *Magee v. Carmack*, 13 *Ill.*, 289.  *Lightbody v. Ontario Bank*, 11 *Wend.*, 9. *Same v. Same*, 13 *Id.*, 101.  *Young v. Adams*, 6 *Mass.*, 182.  *Bank of United States v. Bank of Georgia*, 10 *Wheat.*, 303.  *Bacon v. Westervelt*, 29 *Conn.*, 598.

V.  There was no ratification by Kellogg. Taking the memorandum of deposit in ignorance of the facts that the pretended payment was in a check on the bank, and that the bank was broken at the time, was not a ratification. An offer to sell the supposed deposit was not a ratification, nor a failure to notify plaintiffs in error that he repudiated the transaction between them and Ware, as they were not injured thereby. 2 *Parsons on Contracts*, 623 *and* 624.  An act of the principal to amount to a ratification must be done with a full knowledge of all the

facts of the case, and if either of the above facts were material, the finding of the jury is decisive, as Kellogg testified he did not know that the pretended payment had been made in a check until a few days before the commencement of this suit, and that he told Bickel the day after the bank failure that the plaintiffs in error ought to make good to him the amount. In any view that can be taken of this case the verdict is supported by the evidence.

LAKE, CH. J.

Several objections were taken to the admission of certain testimony, and also to the instructions given to the jury, but the failure to reduce them to writing during the trial term will prevent a review of those questions here.

There is, indeed, but very little dispute about the material facts of this case, which are in substance as follows:

On the 4th day of December, 1871, Kellogg, the defendant in error, and plaintiff in the court below, sold a tract of land to the plaintiffs in error for the sum of fifteen hundred and sixty dollars, and by an arrangement then agreed upon, the deed was deposited with J. A. Ware, a banker in Nebraska City, who upon being paid said purchase money was to deliver it to the said Hughes and Bickle. It was further understood that a thousand dollars of the money should be paid the next day, and the remainder shortly afterwards.

On the fifth day of December, the plaintiffs in error in order to meet their engagement, borrowed a thousand dollars from Daniel Gantt, who was acting as treasurer of the society of Odd Fellows, receiving therefor his check upon Ware, which they at once deposited to the credit of Kellogg, to apply upon the deed. The check was in these words:

"$1,000.00.        NEBRASKA CITY, December 5, 1871.

Banking House of J. A. Ware.

Pay to Hughes and Bickle or bearer  One Thousand Dollars."

    (Signed.)                    DANIEL GANTT,
                                    Treasurer, etc."

On the same day, Kellogg went to Ware's bank and inquired if Hughes and Bickle had left any money for him, and on being told by the clerk that they had deposited a thousand dollars, he said he desired to leave it there, and requested a certificate for the amount which was given to him.   The following is a copy:

" Deposited by S. J. M. Kellogg with J. A. Ware, Dec. 5, 1871.   Checks $1,000.   One Thousand Dollars, (left by Hughes and Bickel.)"

    (Signed.)                    J. A. WARE,
                                    FARWELL."

Thereupon Kellogg was duly credited on the bank books with one thousand dollars, and the Odd Fellows' account charged with the same amount.

At the date of the check, the Odd Fellows had something over three thousand dollars to their credit in the bank, subject to the draft of their treasurer, but Ware was not in a condition at any time during the 5th of December to pay so large a check, although he was still doing business, receiving deposits, and paying out in small amounts.

This, however, was the last day that he did business, and on the sixth day of December, the bank passed into the hands of his assignee, hopelessly insolvent.   There is nothing in the record to indicate what amount Ware's creditors will be likely to receive upon their claims.

Thus matters stood until the commencement of this .

suit on the 16th day of March following, Kellogg meanwhile, speaking to others of his misfortune, and treating the loss as his own. That he ever made any demand upon Hughes and Bickle to reimburse him before bringing suit is not warranted by the testimony. But it is a fact that he did on frequent occasions, endeavor to sell said deposit check for fifty cents on the dollar.

Indeed, the only point on which there is any real difference in the testimony is as to the time when Kellogg first became aware of the fact that a check, instead of money had been deposited by the plaintiffs in error. Kellogg on the one hand swears, that he supposed they had actually deposited the money until about the time he commenced this action; while on the other hand, there is considerable testimony tending strongly to show that he must have known of it on the very day the deposit was made.

From the view that I take of the law governing this transaction, however, it is quite immaterial when he first learned this fact, at it can have no possible bearing on the case. It was to all intents and purposes the same as if the amount had been paid to Ware in currency. Well may it be asked, in what better plight would Kellogg have been to-day, had the deposit been made in bank notes? Would he not have trusted to the responsibility of Ware, and received the certificate of deposit all the same? The fact is that both parties regarded this bank as a safe place of deposit, and both were willing to trust to Ware's integrity and responsibility. And especially is this true of the defendant in error, Kellogg, for instead of demanding his money, when told it had been paid in for him, he elected of his own motion, to have it passed to his credit on the books of the bank, thereby accepting the responsibility of Ware as his only security, that the money would be handed over when he chose to call for it. By this act Ware became his debtor

13

to the amount of the check, while his liability to the Odd Fellows' society was reduced *pro tanto*.

The proposition so earnestly pressed upon our attention, by counsel for the defendant in error, that where an agent is authorized merely to collect a debt, he has no right to accept anything in payment but money, and if he do so it will not bind the principal, is no doubt, as a general rule, correct.   But suppose, in such case, the agent being indebted to the debtor of his principal, should accept payment by a cancellation of his own debt, and afterwards the principal should take the agent's acceptance for the amount, supposing that he had collected the money, would it not be considered a valid and binding transaction?   And even although the agent should prove to be entirely unable to pay a single dollar of the amount, would it be contended, for one moment, that the principal could resort to his original debtor to make good to him the loss?

In very many respects a check of this description is regarded as having the character of an inland bill of exchange, and if the holder would reserve his right to resort to the drawer, he must use the same diligence in giving notice of its dishonor, as would be required of him as the holder of an inland bill.   *Merchant's Bank v Spicer*, 6 *Wend.*, 443.

I do not think that this case is at all analogous to those to which our attention has been directed, wherein the drawer of the check had no funds in the hands of the drawee; or where payment was made in the notes of a broken bank, forged paper, and the like.

In those cases nothing of value was received, nor any release of the principal debtor, and consequently no satisfaction of the demand.   Here, on the contrary, we have a direction given to the banker, by one who had the money in the bank, to place the amount of the debt to the credit of the defendant in error, which was done and

fully assented to by the latter at the time, and acquiesced in by him without objection, for over three months thereafter.

And what is the effect of all this upon the other parties to the transaction? How does it leave them? The account of the Odd Fellows at the bank, having been charged with the amount of this check, which was paid and cancelled, they have no valid claim against Ware for the money. And the plaintiffs in error having given their note to the Odd Fellows for the thousand dollars, must pay it. From this there is no escape. It would seem therefore, upon the broadest principles of justice, that the defendant in error having voluntarily taken Ware's certificate of deposit for the money, ought not to be permitted to recover the amount from the plaintiffs in error, because he might otherwise, perchance, be subjected to the loss of a portion, or even the whole of it.

In my opinion this arrangement amounted substantially to what is termed "payment by delegation;" as where a debtor directs his banker to place to the credit of his creditor, with his assent, a sum of money to be applied in payment of his indebtedness to him. Where this is done and a transfer of the account actually made on the books of the bank, it is held to be equivalent to payment, even although the banker should become bankrupt and the creditor thereby lose the money. 2 *Parsons on Contracts*, 137, *and notes*.

I am of the opinion, therefore, that as between Kellogg and Hughes and Bickle, there was a payment of one thousand dollars on the 5th day of December, 1871, which was a satisfaction, *pro tanto*, of the agreed consideration to be paid for the land; and inasmuch as the verdict was in conflict with these views, the judgment must be set aside and a new trial awarded.

REVERSED AND REMANDED.

MR. JUSTICE MAXWELL concurs.