WOOD RIVER BANK OF WOOD RIVER v. FIRST NATIONAL BANK OF OMAHA.

FILED APRIL 26, 1893. No. 4596.

1. **Inland Bills of Exchange:** PROTEST. The term "protest," as applied to inland bills of exchange, includes only the steps essential to charge the drawer and indorser.

2. **Bank Checks:** LIABILITY OF INDORSER: DISHONOR: NOTICE. Bank checks in this country are regarded as inland bills of exchange for the purpose of presentment and demand, and notice of dishonor, and do not require a formal protest in order to charge the indorsers.

3. ———: DAYS OF GRACE: PRESENTATION. They are also due upon presentation, and not entitled to days of grace.

4. ———: LIABILITY OF INDORSEE FOR COLLECTION FOR FAILURE TO PROTEST: TIME FOR NOTICE. A bank receiving for collection from a correspondent checks drawn upon it by a customer with instructions to protest in case of non-payment, is required, in case payment is refused for want of funds, to give notice to the bank from which they were received not later than the next

day after the dishonor. And when they are held for two days in order to enable the drawer to provide funds for payment thereof a jury will be warranted in finding that the bank intended to accept them and become liable thereon.

5. ———: ———: EFFECT OF DELIVERY TO NOTARY. The general rule is that where a bank delivers a note or bill to a notary public for demand, protest, and notice, it will not be liable for the default of the latter.

6. ———: ———: ———: NOTARY AGENT OF BANK. But where such bill remains in the bank to be protested for non-payment by the president and manager thereof, a notary public, and who, although aware of the instructions to the contrary, delays noting for protest or giving notice, in consequence of which the indorsers are discharged, such notary will be held to be the agent of the bank, and the latter will be liable for his negligence.

ERROR from the district court of Hall county. Tried below before HARRISON, J.

*James H. Woolley,* for plaintiff in error.

*W. H. Thompson, contra.*

POST, J.

This was an action in the district court of Hall county to recover for the failure of the defendant below, plaintiff in error, to give notice of the dishonor of certain checks received by it for collection from the plaintiff below, by reason of which certain indorsers thereon were discharged, to the damage of the latter. The facts as they appear from the pleadings and proofs are substantially as follows :

About the 11th day of January, 1887, at Ravenna, in Buffalo county, one Hillebrandt drew eleven checks to the order of as many · different payees upon the defendant, the Wood River Bank, doing business at Wood River, Hall county, amounting in the aggregate to $737.28. The checks aforesaid were all cashed by the Farmers Bank of Ravenna, upon the indorsement of the several payees, and upon the day above named were transmitted by it with

proper indorsements for collection to the First National
Bank of Omaha.  On the evening of the next day, Jan-
uary 12, the last named bank forwarded them by mail,
properly indorsed, for collection to the defendant bank at
Wood River, with instructions to protest unless promptly
paid.

The evidence is conflicting with respect to the time of
the receipt of the checks by the defendant. If we regarded
that question as decisive of the case, we would feel con-
strained to resolve it in favor of the defendant, notwith-
standing the finding of the jury that they were received by
it on the evening of the 13th.  Both Hockenberger, the
cashier, and Hollister, the president, testify positively that
the checks were received by the bank on the aftern)on of
the 14th.  But the judgment is right nevertheless.  It is
evident from their testimony that the checks were received
at the bank before the close of its business on the 14th ;
that they were opened and examined by the witnesses, who
were both aware that there were no funds to the credit of
the drawer, and who delayed giving of notice or taking of
any steps for the protection of the plaintiff below, in order
to enable Hillebrandt to provide funds to balance his ac-
count the next day.  It is admitted also that the defendant
bank continued to pay Hillebrandt's checks in favor of
home customers, although no entries appear to his credit
on its books subsequent to the 13th.  The jury were war-
ranted upon the admitted facts in finding that the bank in-
tended to accept the bills and that by its delay it became
liable thereon. (*Northumberland Bank v. McMichael,* 106
Pa. St., 460.)

Checks like those in question are to be regarded as in-
land bills of exchange, therefore protest is not essential in
order to preserve the rights of antecedent parties (*Hughes
v. Kellogg,* 3 Neb., 194; Daniel, Neg. Insts., 926 ; Chitty,
Bills [8th ed.], 500, 501), although the holder is re-
quired to exercise the same degree of diligence in giving

notice of dishonor as in cases where a formal protest is necessary. The term protest as applied to inland bills is used in its popular sense and means the steps essential in order to charge the drawer and indorsers. (Daniel, Neg. Insts., 929; *Ayrault v. Pacific Bank*, 47 N. Y., 570.) It was the duty of the defendant bank to promptly give notice of the non-payment of the checks, either directly to the bank from which they were received, or to place them in the hands of a notary public for protest and notice. Bank checks, unlike bills of exchange, are due on the day they are presented for payment and not entitled to days of grace. (Boone, Bkg., 165, 250; *Morrisons v. Bailey*, 5 O. St., 13; *Champion v. Gordon*, 70 Pa. St., 474; *Fletcher v. Thompson*, 55 N. H., 308; 2 Am. & Eng. Ency. of Law, 398.) The checks in question were dishonored on the 14th when received through the mail, and payment refused for want of funds. Both the president and cashier, the only managing officers, knew that Hillebrandt's account was overdrawn; there was, therefore, no occasion for time to examine their books.

It is said by Chancellor Kent, 3 Kent's Com., 105: "According to modern doctrine, the notice must be given by the first direct and regular conveyance. This means the first mail that goes after the day next to the third day of grace; so that if the third day of grace be on Thursday, and the drawer and indorser reside out of town, the notice may indeed be sent on Thursday, but *must* be put into the post-office or mailed on Friday so as to be forwarded as soon as possible thereafter."

The next inquiry is whether by delivering the checks to the notary public on the 15th for protest the defendant discharged its duty to the plaintiff, for it is clear, upon authority, that that was the latest day on which notice could have been given in order to charge the indorsers. The rule sanctioned by the weight of authority is conceded to be that a bank which places paper in the hands of notary

public with directions to proceed in such manner as to protect the rights of the beneficial owner and indorsers will not be held liable for the failure of the notary to discharge his duty. (See Boone, Bkg., 205; 2 Am. & Eng. Ency. of Law, 113.) But this case cannot be held to be within the rule just stated. Here the notary was the president and managing officer of the bank and who, being aware of the dishonor of the checks on the 14th, did not protest them for non-payment or notify the plaintiff or other indorsers of that fact until the 17th. It is evident, too, that the cashier was aware of the dereliction of the president, for the checks appear to have remained in the bank during all the time, and whatever was done by the latter by way of noting protest, giving notice, etc., was with the knowledge of the former. It is true the 16th was Sunday, but the default occurred on the 15th. It was the duty of the notary on that day to notify the plaintiff by mail of the dishonor of the paper. The failure to protect the plaintiff as an indorser is directly attributable to the fault of the managers of the bank and it will not be permitted to take refuge behind the notary, and to interpose his negligence as a defense. Upon the facts of this case, the notary will not be held to be the agent of the plaintiff but rather of the defendant. (*Commercial Bank v. Barksdale*, 36 Mo., 563.)

2. The plaintiff below assumed the burden of proving the solvency of the first indorsers, the payees of the several checks. For that purpose Mr. Davis, the cashier of the Farmers Bank of Ravenna, was called as a witness and testified that he was acquainted with the financial standing of the parties named and that he considered them good for the amounts named in the checks bearing their respective indorsements. From his cross-examination it appeared that one or more of them were somewhat embarrassed financially. It is now urged that there is not sufficient evidence of the solvency of the indorsers, hence it cannot be said

that the plaintiff has been damaged.   This argument is fully answered by the opinion of Judge LAKE in *Steele v. Russell,* 5 Neb., 211.   The fact that the indorsers may have been unable to meet all obligations at maturity does not conclusively establish their insolvency such as to constitute a defense in this action.

The judgment of the district court is right and is

AFFIRMED.

THE other judges concur.